805 F.2d 1536
 Carl DiMASSIMO and Ramona M. DiMassimo,
Plaintiffs-Appellants, Cross-Appellees,
and
Maxine Jackson and George Jackson,
Plaintiffs-Intervenors-Appellants, Cross-Appellees.
v.
CITY OF CLEARWATER, et al., Defendants-Appellees, Cross-Appellants.
 No. 85-3654.
 United States Court of Appeals,
Eleventh Circuit.
 Dec. 19, 1986.
 
 David J. Gruskin, Gulfcoast Legal Services, Inc., Clearwater, Fla., for plaintiffs-appellants, cross-appellees.
 Alan S. Zimmet, Asst. City Atty., Clearwater, Fla., for defendants-appellees, cross-appellants.
 Appeals from the United States District Court for the Middle District of Florida.
 Before RONEY, Chief Judge, FAY, Circuit Judge and SIMPSON, Senior Circuit Judge.
 SIMPSON, Senior Circuit Judge:
 
 
 1
 The City of Clearwater, Florida, provides utilities, including gas and water services, to customers pursuant to a code of ordinances which provides, in pertinent part, that the only customers who may apply for, and obtain utilities are owners whose land receives the benefit of those services or persons who have the owner's authority to request that utilities be provided to the premises and agree that the owner shall be responsible for the payment of charges for all services furnished. The ordinances further provide that the owner's acknowledgment of responsibility shall be a necessary condition to the inception and continuance of services, that any outstanding debts for utilities shall be a lien against the property and that the lien may be enforced by foreclosure. CLEARWATER CODE Secs. 50.02-04 & 50.07.10.
 
 
 2
 The DiMassimos and the Jacksons are former tenants of rental properties which were served by the City and, as such, were the actual users of the services provided. At the request of their respective landlords, the City disconnected the DiMassimos' gas and water service and the Jacksons' water service without providing either tenant family prior notice of the intent to disconnect or an opportunity to protest the interruption of service. Each family attempted to have its utilities reconnected but was refused service because they were neither landowners nor persons who could furnish the landowners acknowledgment of responsibility.
 
 
 3
 The plaintiffs filed suit against the City, its mayor, commissioners, city manager and director of public utilities (collectively "the City") pursuant to 42 U.S.C. Secs. 1983 & 1988, seeking money damages and declaratory and injunctive relief on allegations that the City's failure to provide pretermination notice and an opportunity to protest the termination of services violated procedural due process rights and that the City's refusal to contract directly with tenant users of utilities violated both substantive due process and rights to equal protection under the law, all of which are guaranteed by the Fourteenth Amendment.
 
 
 4
 After receiving documentary evidence, stipulations that the basic facts are not in dispute, and oral and written arguments from counsel from both sides, the district court entered summary judgment on the City's motion. The district judge held, inter alia, that Florida statutory law granted the tenants a protectable right to avoid constructive eviction by the landlords' deprivation of water services which was specifically enforceable by an action brought in the state court for injunctive relief. The court then determined that the City's practice of terminating water services at the landlord's request without prior notice to the utility using tenant deprived that tenant of his right to prevent constructive eviction without due process and determined that the proper remedy was an injunction which required the City to give the utility user notice, five days prior to the termination of service, by a method such as certified mail or the posting of a notice on the premises, in order to allow the tenant sufficient time to exercise his statutory right to seek an injunction in the state court against his landlord requiring the continuation of water service.[1] The court denied all other requests for relief, specifically holding that the City's practice of accepting applications for utility services only from the landowner or a person with the authority to bind the owner to a contract holding him responsible for the payment for services provided to his property withstood both equal protection and substantive due process challenges and further holding that there was no necessity for the City to provide the tenant an opportunity to protest the termination because his proper remedy was a suit against the landlord in state court. The accompanying memorandum decision did not reveal any reason why the court did not consider an award of damages even though it found a deprivation of plaintiff's rights to procedural due process.
 
 
 5
 All parties have appealed the district court's final judgment. The plaintiffs argue that the court erred in failing to require a pretermination hearing, in finding that the City's ordinances do not violate fourteenth amendment guarantees of equal protection and substantive due process and, finally, erred in denying them at least nominal damages and an opportunity to prove a claim for compensatory damages for injuries which were pleaded in the complaints and which were allegedly suffered as a result of the termination of utility services to the respective families.
 
 
 6
 The City, on the other hand, argues that the Court erred in finding that the plaintiffs had a property interest in continued utility service which was sufficient to require the protection of procedural due process. We will dispose of the issues of procedural due process, substantive due process and equal protection in the order in which they were discussed in the district court's memorandum and decision. We have considered all the arguments raised in the parties' briefs but will limit our discussion to those issues which are necessary to an understanding of the case and its disposition.
 
 
 7
 The district court and the parties agree that, in order to claim the protection of the due process clause in this case, the plaintiffs must show a "property interest" in the continued receipt of the water services which were furnished to the premises upon which they resided ("continued service"). The interest must arise under state law and the plaintiffs must show a legitimate claim of entitlement to the interest asserted rather than a mere expectation, need or desire for it. See, Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) and Arnett v. Kennedy, 416 U.S. 134, 151-52, 94 S.Ct. 1633, 1642-43, 40 L.Ed.2d 15 (1974) (plurality opinion). The City cited Sterling v. Village of Maywood, 579 F.2d 1350 (7th Cir.1978) cert. denied, 440 U.S. 913, 99 S.Ct. 1227, 59 L.Ed.2d 462 (1979), for the proposition that tenants as mere water service users[2] have no protected interests in continued service which require pre-disconnection notice and an opportunity to be heard, when the landowners who have contracted for those services request termination. The district court rejected Sterling as controlling authority for several reasons. We need only discuss one. Sterling arose out of a controversy between an Illinois municipality and a user of its utilities. The Sterling court rejected the plaintiff's claim that the municipality had violated her procedural due process rights by finding that she had no contractual relationship with the City and could "... point to no provision in the state's laws or in the municipal ordinances that purports to provide her with a legitimate claim of entitlement to water service." In the instant case, the district judge found that Florida's landlord-tenant law does create such an entitlement. Florida statutes not only specifically require a landlord of a dwelling unit, other than a single-family home or duplex to provide his tenants with running water,[3] and grant a tenant the right to seek injunctive relief against the landlord[4] but also implicitly require the landlords to furnish water to single dwellings and duplexes where the failure to do so amounts to constructive eviction. The court below noted:
 
 
 8
 The Court has no doubt that the tenants have a sufficient interest in preventing the landlord from unilaterally bypassing statutory eviction procedures to sustain the instant action. Florida Statutes Sec. 83.59(3)(a) provides that a landlord may only recover possession of a leasehold through proper legal proceedings. Section 83.54, mentioned earlier, declares that "[a]ny right or duty declared in this part is enforceable by civil action." Depriving a tenant of water services amounts to constructive eviction, which, under Sec. 83.54, a tenant would be entitled to halt in a suit to enjoin the landlord from taking possession by means other than the eviction proceedings required by Sec. 89.59(3)(a). The reason for exempting single-family homes and duplexes from the requirement that the landlord provide water services is that in many areas the tenants are able to contract with the city for those services themselves. When read in its entirety, it is clear that Florida's Landlord and Tenant Act, Fla.Stat. ch. 83, would not sanction the withdrawal of water services from house or duplex tenants by their landlords because such action would constitute either the failure to provide necessary facilities for sustaining life or the constructive eviction of tenants contrary to statutory directives for such action. Therefore, under the definition of "property interest" commonly used for section 1983 purposes, see, e.g. Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the actual users of water utilities service may have protectable interests. (Record vol. 2 doc. 41 pp. 6-7 footnotes omitted.)
 
 
 9
 Sterling is clearly inapplicable to the instant case because the judge found a protectable interest i.e., the right to prevent the landlord from obtaining a constructive eviction by disconnecting the city water services. The City has presented no convincing argument that the district court misinterpreted Florida law.
 
 
 10
 As a fallback position, the City argues that its practice of disconnecting water service without prior notice does not violate the right to avoid constructive eviction because the tenant retains the right to sue his landlord for an injunction requiring him to provide water and may seek money damages to remedy any injuries caused by a temporary disconnection. This argument is unconvincing. The statutes were clearly drafted not only to allow compensation but to prevent wrongful eviction. Where the City fails to afford the tenant sufficient notice to allow him time to apply for an injunction, it deprives him of his statutory right to prevent a wrongful act. The Supreme Court has recognized that "... the cessation of essential services for any appreciable time works a uniquely final deprivation." Memphis Gas, Light & Water Division v. Craft, 436 U.S. 1, 20, 98 S.Ct. 1554, 1566, 56 L.Ed.2d 30 (1978). That is especially true where the landlord's request for the cessation of those services violates a tenant's right to continuous occupation and quiet enjoyment of his leasehold. See, generally, 34 Fla.Jur.2d Landlord and Tenant Sec. 49 (constructive eviction breeches covenant of quiet enjoyment). Consequently, we hold that the district court was correct in holding that pretermination notice to the tenant is necessary to prevent the City from destroying rights granted him by state law.
 
 
 11
 However, the City is not alone in finding fault with the district court. The plaintiffs argue that the court failed to grant adequate relief in merely requiring five days notice. They assert that Craft, supra, requires an opportunity to protest the proposed termination to a utility employee who has been granted the authority to provide relief. We find no merit in this assertion. In Craft, the primary conflict was between a municipal utility and a customer whose service was disconnected for non-payment of a bill which, by error, was an overcharge. The utility repeatedly disconnected the customer's service while the customer fruitlessly attempted to get the bill corrected. The Supreme Court held, inter alia, that due process requires, at a minimum, an opportunity to present the facts to an employee who has the power to correct billing errors before service is disconnected. Although the plaintiffs in the instant case have argued that Clearwater must grant them a similar right to be heard prior to disconnection, they have provided no explanation as to what the proposed hearing would accomplish. A city may undoubtedly grant an employee of its utility the power to correct bills but a city employee would have no jurisdiction to resolve disputes between landlords and tenants which caused the terminations of service in this case. Florida law grants its courts the exclusive power to resolve such conflicts. See, Fla.Stat. Sec. 34.011 (1975). Consequently, we find that Craft is inapplicable to this case insofar as it requires a utility to provide a hearing before one of its employees prior to disconnecting a tenant's water service.
 
 
 12
 The plaintiff's substantive due process and equal protection claims both attack the City's policy of dispensing water service only to those premises where the owner acknowledges his responsibility for utility bills by joining in his tenant's application. Substantive due process requires only that the City show that its scheme is rationally related to the asserted legitimate governmental purpose of maintaining a financially stable municipal utility. Chatham v. Jackson, 613 F.2d 73, 79 (5th Cir.1980). The ordinances obviously meet this standard because a landowner, whose property is readily subject to liens and foreclosure may be rationally presumed to be more readily held to account as the ultimate guarantor of the bills than a tenant who may freely abandon the lease, leaving behind only his outstanding debts. Accordingly, we reject any assertion that the requirements of substantive due process were not satisfied.
 
 
 13
 The plaintiffs' equal protection arguments state that the City's scheme of providing water only to those tenants who obtain their landlord's permission to receive utility services is impermissible because it is neither "fairly" nor "substantially" related to an important governmental objective.[5] They raise no argument that the City's objective of maintaining a financially sound utility system is in any way unimportant but assert only that the relationship between the requirement of the landlord's agreement and the goal of financial responsibility is neither fair nor substantial.
 
 
 14
 The plaintiffs characterize the ordinances as unfair because they deny water service to a class of tenants who cannot obtain their landlord's acknowledgment of responsibility. The district court again noted that Florida law provides that a tenant may remedy a landlord's denial of essential services by an injunction, and held that there was no total deprivation of water service because a tenant who received five days notice prior to disconnection and obtained an injunction would receive water. (Vol. 2, doc. 41, p. 11 n. 3) Plaintiffs argue that the judge erred because he failed to take into account that some tenants may not receive water service when they take possession of the premises and, therefore, will receive no protection for a period of days. However, the equal protection clause was never designed to assure that in all cases no one will suffer from a foolish act, which in this case would be assuming a tenancy without ascertaining that the landlord had provided water service or would sign the tenant's application for that service.
 
 
 15
 The district court correctly held that the City did not distinguish between classes of tenants but between landlords and tenants as the ultimate guarantors of water bills. The plaintiffs argue that this too is neither fairly nor substantially related to the goal of keeping the City financially sound because ordinances authorize liens against the property regardless of whether the landlord acknowledges responsibility, and because the tenants can guarantee their own debts by other methods such as the posting of deposits. This argument ignores certain realities. First, land is a unique asset in that it cannot be removed from the city limits and invariably has some value. Liens against land for water services provided to tenants at their request have been approved by the Courts because the threat of the loss of land bears a substantial relationship to financial responsibility:
 
 
 16
 It encourages property owners either to rent to responsible tenants or to collect security in advance; also, property owners will be less wasteful of a natural resource and more careful about the condition of the plumbing in their rental property if they are held ultimately responsible for huge bills caused by a large leak.
 
 
 17
 Chatham v. Jackson, 613 F.2d at 80. Requiring a landlord's joinder in the application for utilities serves to remind each owner of his obligations and liability to the City and therefore, furthers the goal of collection by reducing the possibility that the City will be faced with the administrative expenses of repeatedly resorting to cumbersome and expensive foreclosure proceedings. A financial deposit sufficient to provide the City with the same degree of security would indeed be burdensome to any potential tenant. We therefore hold that the landowner and the tenant are so dissimilarly situated that they may be treated differently under the City's ordinances without offending the Fourteenth Amendment's equal protection clause. See, Id. at 79.
 
 
 18
 Finally, we note that the parties agree that the plaintiffs are entitled to at least nominal damages if the district court correctly found that the City deprived them of a property right without due process. See, Carey v. Piphus, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). The parties differ as to whether the plaintiffs can prove that they are entitled to more than nominal damages. The issue of damages was not discussed at all by the district court which is uniquely equipped to receive evidence as to the causation and extent of any injury suffered by the plaintiffs and to assess damages accordingly. We therefore remand the case to the district court to determine whether, and in what amount compensatory damages should be awarded to the plaintiffs.
 
 
 19
 For the reasons stated above we AFFIRM the district court's disposition of the claims for injunctive relief, REVERSE the judgment insofar as it denies plaintiffs' nominal damages and REMAND the case to the district court for the determination whether compensatory damages should be awarded, and, if so, for the assessment of damages.
 
 
 20
 AFFIRMED In Part, REVERSED and REMANDED In Part.
 
 
 
 [1]
 The district court's memorandum opinion does not state, and the appellants do not argue on appeal, that the tenants enjoy comparable rights in the continuation of gas service which was also disconnected from the DiMassimo residence. Rather, they frequently refer to the unique role of water as a necessity to maintain life. Accordingly, we need not and will not decide here whether comparable notice is required prior to the termination of gas service by the City
 
 
 [2]
 The Jacksons applied for water services and received bills in their own names because their landlord had filed an acknowledgment of responsibility form two years prior to the beginning of the Jacksons' tenancy. The Jacksons argued that they had acquired a contractual right to continued service by their course of dealing with the City. The City argued, to the contrary, that no contractual understanding could arise between the Jacksons and City employees because any agreement for continued service after the landlord had requested termination (and therefore disclaimed further liability) would be ultra vires under the City's ordinances. In a footnote the district judge speculated that such a right might have arisen under the facts presented but did not cite this speculation as grounds for his decision. By virtue of the results reached in this opinion, we find it unnecessary to resolve this theoretical argument
 
 
 [3]
 Fla.Stat. Sec. 83.51 (1983)
 
 
 [4]
 Fla.Stat. Sec. 83.54 (1983)
 
 
 [5]
 The City has at all times maintained that it is required to show no more than a "rational" relationship. The district court found it unnecessary to decide whether the plaintiffs or the City have stated the correct standard because it held that the defendants were entitled to judgment under either standard. Because we agree with the district judge and sustain the judgment entered below, we too leave this issue undecided