Andrea JAMES, individually and on behalf of her four dependent children, Plaintiff–Appellant,

v.

The CITY OF ST. PETERSBURG, FLORIDA, Robert L. Ulrich, as Mayor of the City of St. Petersburg; Robert D. Obering, as City Manager; William Johnson, as Director of the Public Works Department for the City of St. Petersburg, Florida; Bobbie Joe Jordan; and Chun–Liang Chen, Defendants–Appellees.

No. 92–2291.

United States Court of Appeals, Eleventh Circuit.

Oct. 22, 1993.

Rehearing En Banc Granted and Opinion Vacated Dec. 30, 1993.

**1458**

John P. Cunningham, St. Petersburg, FL, for plaintiff-appellant.

Michael S. Davis, Suzanne A. Ennis, City Atty.'s Office, St. Petersburg, FL, for defendants-appellees.

Before COX and JOHNSON, Circuit Judges, and ATKINS *, Senior District Judge.

ATKINS, Senior District Judge:

Appellant Andrea James (James) sued the City of St. Petersburg (City), various city officials and the previous owner of her duplex after her water service was terminated without notice. James appeals the district court's order granting the City of St. Petersburg's (City) Motion for Summary Judgment and denying her Motion for Partial Summary Judgment. The district court held that the City did not violate James's constitutional rights by terminating her water service because the service was a matter of contract not a circumstance actionable under 42 U.S.C.A. § 1983 (West 1981). For the reasons that follow, we reverse and remand.

## I. BACKGROUND

On August 3, 1990, Bobbie Joe Jordan (Jordan) purchased the duplex from Chun-Liang Chen (Chen). However, neither Chen nor Jordan notified the City of the change in ownership. On October 2, 1990, appellant, along with her four minor children, moved into a duplex home in St. Petersburg, Florida. James and her landlord, Jordan, entered into an oral month-to-month lease whereby James was to pay $350 monthly rental for a downstairs apartment.[1] This rental included water service.

Two months after the property sale, on October 8, 1990, Chen called the City Utility Accounts Division requesting the termination of water services to his former residence. That day, the City terminated water service to James's home without providing notice to her.[2] At the time, Chen had no knowledge that anyone was living in the downstairs apartment.

Appellant waited until October 18, 1990, to notify the City that she and her children were living in the duplex without any water service. On that day, the City Utilities Accounts Manager, David C. Nichols (Nichols), informed James that she could have the water account placed in her name and water service would promptly resume at the property. However, James informed Nichols that she did not have the requisite deposit and, as an AFDC recipient, she did not have the resources to pay the deposit. Nevertheless, Nichols offered to restore water service to the duplex if James agreed to pay the City a deposit of $212.50 by October 22, 1990, at 8:30 a.m. James signed such an agreement on October 18, 1990. R–1–1 Exh.D. On October 22, 1990, James was unable to pay the deposit and the City terminated water service for the second time.[3]

---

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

1. Under Florida Law, where a lease agreement was not reduced to writing, and lease payments were made monthly, the court found that a month-to-month tenancy at will was created. *In re Hasty*, 25 B.R. 429 (Bankr.M.D.Fla.1982). *See* Fla.Stat. § 83.01 (1967).

2. The city ordinances did not require pre-termination notice to a tenant or actual user of water services unless they were a delinquent account

holder. St. Petersburg Municipal Code Art. I, Sec. 28–27.5(1).

3. The parties disagree as to what occurred prior to the first reinstatement of water service. Appellant suggests that the City refused to resume water service until October 18, 1990. However, appellant does not mention any action taken by her from the time that the water was disconnected, October 8, 1990, through the re-connection on October 18, 1990. Conversely, appellees allege that appellant did not immediately call the City after her water was disconnected. Instead,

On October 26, 1990, appellant filed an action in County Court against her landlord, Jordan, for failure to provide water to a tenant pursuant to Fla.Stat. § 83.54 (1973). In that case, the judge ordered Jordan to restore water service to the premises. Jordan disobeyed that order. On November 7, 1990, the Judge found in favor of James and held that James could pay $212.50 of her November rent as a deposit to the City's Water Department to secure her water service. In March, 1991, Jordan failed to appear at the jury trial. Consequently, the court awarded final judgment in the amount of $2,237.50 to James. In addition, James was allowed to recover all rent placed in the court registry.

Finally, on June 17, 1991, James asked the City to disconnect her water service at the property because she was moving. As of that date, James had an outstanding water bill in the amount of $155.23. To date, James has not paid that bill.

## II. PROCEDURAL HISTORY

On October 24, 1990, appellant commenced this action in the United States District Court for the Middle District of Florida, Tampa Division. In her complaint, arising from the abovementioned termination of water service, appellant sought a declaratory judgment, injunctive relief, damages and attorney's fees pursuant to 28 U.S.C. §§ 1331, 2201 and 2202, 42 U.S.C. §§ 1983 and 1988 and Fed.R.Civ.P. 54, 57 and 65. Appellant simultaneously filed a motion for a temporary restraining order requiring the City to restore water service to the duplex.

The district court denied appellant's motion for the temporary restraining order on October 25, 1990. On December 6, 1990, and January 15, 1991, respectively, appellant's

claims against defendants Bobbie Joe Jordan and Chun–Liang Chen were voluntarily dismissed.

On February 27, 1992, the district court granted appellees' Motion for Summary Judgment and denied appellant's Motion for Partial Summary Judgment. Appellant then filed a timely Notice of Appeal.

## III. STANDARD OF REVIEW

■ This court's review of the granting or denying of a summary judgment is plenary and is conducted utilizing the same legal standards as those used in the district court. See Warren v. Crawford, 927 F.2d 559, 561 (11th Cir.1991); Carlin Communication, Inc. v. Southern Bell Telephone and Telegraph Co., 802 F.2d 1352, 1356 (11th Cir.1986). In the district court, a motion for summary judgment will be granted only if the moving party establishes the absence of a genuine dispute as to any material fact and that he is entitled to a judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), cert. denied, 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988). The court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. Marine Coatings of Ala., Inc. v. United States, 932 F.2d 1370, 1375 (11th Cir.1991).

## IV. DISCUSSION

■ Appellant challenges the district court's determination that she had no protected property interest in city water service.[4] She argues that because both federal and state law recognize a property interest in water service, she is entitled to pre-termi-

---

she first called Gulfcoast Legal Services on October 17, 1990, nine days after the disconnection. Appellees claim that James waited until the next day, October 18, 1990, to notify the City that she was without service. However, this is not a material fact and does not bear on the determination to be made by this court.

**4.** We first note that appellant's claim is not moot even though she vacated the premises at issue. As in Memphis Light, Gas & Water Division v. Craft, 436 U.S. 1, 8, 98 S.Ct. 1554, 1560, 56

L.Ed.2d 30 (1978), appellant's claim for "damages arising from [the City's] termination[ ] of service saves this cause from the bar of mootness." Furthermore, this factual circumstance most likely falls under the special rule where a case is not moot because it is "capable of repetition, yet evading review." Murphy v. Hunt, 455 U.S. 478, 482, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982); News–Journal Corp. v. Foxman, 939 F.2d 1499, 1506–07 (11th Cir.1991). However, Memphis Light shows us that this inquiry is not necessary. 436 U.S. at 8, 98 S.Ct. at 1559–60.

nation notice under the Due Process Clause of the Fourteenth Amendment.[5]

■ The Fourteenth Amendment limits governmental action that deprives interests which are considered "property" under the Due Process Clause. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Therefore, before considering what notice is "due," the court must determine whether the plaintiff has a legitimate property interest.

### A. *Property Interest*

■ One of the many ways to establish a property interest allowing an individual to claim entitlement to due process protection is through state law. *Id.* For example, the Supreme Court considered whether Tennessee law created a protectable property interest in utility services in *Memphis Light, Gas & Water Division v. Craft,* 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978).

In *Memphis Light,* the Court observed that Tennessee law drew "a line between utility bills that were the subject of a bona fide dispute and those that were not." *Id.* at 9, 98 S.Ct. at 1560. The Tennessee law at issue did not allow utilities to terminate service to a customer who had a bona fide dispute concerning a bill. The Court held that because Tennessee law prohibited a public utility from terminating service "at will," the plaintiffs-homeowners had a "legitimate claim of entitlement" under the Fourteenth Amendment. *Id.* at 11–12, 98 S.Ct. at 1561. The Court viewed Tennessee's limitations on the utility's ability to terminate service as "evidence of the State's recognition of a protected interest." *Id.* at 11, 98 S.Ct. at 1561.

We now apply *Memphis Light*'s principles to the present case to determine whether James has a protectable property interest. To do this, we begin with an examination of pertinent Florida law.

Florida statutes provide residential tenants with various protections from the wrongful termination of utility services. For example, Fla.Stat. § 83.67 prohibits a landlord from interrupting a tenant's water service, directly or indirectly.[6] Section 180.135(1)(a) proscribes a municipality's refusal or discontinuance of water service to a tenant for nonpayment of service charges incurred by a former occupant.[7] Additionally, section 180.-

---

**5.** The Due Process Clause of the Fourteenth Amendment states: "nor shall any State deprive any person of life, liberty or property, without due process of law."

**6.** Fla.Stat. § 83.67 (1991) provides in pertinent part:

(1) No landlord of any dwelling unit governed by this part shall cause, directly or indirectly, the termination or interruption of any utility services furnished the tenant, including, but not limited to, water, heat, light, electricity, gas, elevator, garbage collection, or refrigeration, whether or not the utility service is under the control of, or payment is made by, the landlord.

. . . . .

(5) A violation of this section shall constitute irreparable harm for the purposes of injunctive relief.

(6) The remedies provided by this section are not exclusive and shall not preclude the tenant from pursuing any other remedy at law or equity which the tenant may have.

**7.** Fla.Stat. § 180.135 (1991)—Utility services provides in part:

(1)(a) Any other provision of law to the contrary notwithstanding, no municipality may re-

fuse services or discontinue utility, water, or sewer services to the owner of any rental unit or to a tenant or prospective tenant of such rental unit for nonpayment of service charges incurred by a former occupant of the rental unit; any such unpaid service charges incurred by a former occupant will not be the basis for any lien against the rental property or legal action against the present tenant or owner to recover such charges except to the extent that the present tenant or owner has benefitted directly from the service provided to the former occupant.

. . . . .

(2) The provisions of this section may not be waived through any contractual arrangement between a municipality and a landlord whereby the landlord agrees to be responsible for a tenant's or future tenant's payment of service charges.

. . . . .

(4) In any case where a tenant subject to part II of chapter 83 [Residential Tenancies] does not make payment for service charges to a municipality for the provision of utility, water, or sewer services, the landlord may thereupon commence eviction proceedings. Nothing in this section shall be construed to prohibit a municipality from discontinuing service to

135(4) allows a municipality to discontinue service to a tenant *only* where the tenant fails to make timely payment and the municipality provides the tenant with a thirty-day grace period.[8] Just as "the availability of ... local-law remedies [was] evidence of [Tennessee's] recognition of a protected interest" in utility services, *Memphis Light*, 436 U.S. at 11, 98 S.Ct. at 1561, the protections afforded in the Florida statutes are evidence of Florida's recognition of a protected interest in water service.

In addition to the statutes themselves, this circuit has previously stated that "under the definition of 'property interest' commonly used for section 1983 purposes, the *actual users* of water utilities service may have protectable interests." *DiMassimo v. City of Clearwater*, 805 F.2d 1536, 1540 (11th Cir. 1986) (citation omitted) (emphasis added). In reaching this conclusion, the *DiMassimo* court followed the district court's reasoning as follows:

> Depriving a tenant of water services amounts to constructive eviction, which, under § 83.54, a tenant would be entitled to halt in a suit to enjoin the landlord from taking possession by means other than the eviction proceedings require by § 89.-59(3)(a). The reason for exempting single-family homes and duplexes from the requirement that the landlord provide water services is that in many areas the tenants are able to contract with the city for those services themselves. When read in its entirety, it is clear that Florida's Landlord and Tenant Act, Fla.Stat. ch. 83, would not sanction the withdrawal of water services from house or duplex tenants by their landlords because such action would constitute either the failure to provide necessary facilities for sustaining life or the construc-

tive eviction of tenants contrary to statutory directives for such action.

*Id.* at 1539–40 (quoting district court order at 6–7). Examining only the applicable Florida landlord-tenant rights and remedies available at that time,[9] the court went on to hold that "pretermination notice to the tenant is necessary to prevent the City from destroying rights granted him by state law." *Id.* at 1540.

*DiMassimo* could be interpreted as recognizing a protectable property interest in water service only in circumstances where the Florida law granting the tenant's "right to prevent the landlord from obtaining constructive eviction by disconnecting the city water services" applies. *Id.* However, the laws which the *DiMassimo* court found as evidence of such "rights" were far less supportive of a protectable property interest than the laws discussed above.[10] Significantly, the Florida Legislature's recent addition in Fla.Stat. § 180.135(4) providing that a municipal utility must give tenants a grace period of thirty days prior to canceling their service for nonpayment supports this conclusion. This provision limits a municipal utility's action against *tenants* or, in the words of *DiMassimo*, the "actual users" of the utility service. The statute proscribes a municipal utility's ability to terminate a tenant's service independent of the tenant's rights or remedies against the landlord.

Viewing the Florida statutes as a whole, in particular the tenants' thirty-day grace period required in Fla.Stat. ch. 180.135(4), along with this circuit's observation that an actual user has a protectable property interest in water service, *id.* at 1539–40, we have no difficulty in concluding that James, as an *actual user*, had a protectable property interest in water service.[11]

8. *Id.*

9. Fla.Stat. §§ 83.51 (1982), 83.54 (1973) and 83.59 (1982).

10. Effective October 1, 1987, eleven months after *DiMassimo*, the landlord's inability to use utility cutoff as constructive eviction was codified in Fla.Stat. § 83.67 (1991). *See also* recent changes in Fla.Stat. ch. 180.135 (1988).

11. Appellees argue that there was no contract—express or implied—granting James a property

a tenant who is in arrears 30 days or more, or as required by bond covenant.

interest. The City alleges that James's landlord never had a water service contract with the City and, although Chen had such a contract, James received no third-party implied benefit from Chen's contract. This is irrelevant. The *DiMassimo* court recognized that Florida law provided a property interest in utility service even where the tenant had no contract with the utility provider. 805 F.2d at 1539. *Compare Sterling v. Village of Maywood*, 579 F.2d 1350, 1354 (7th Cir.1978), *cert. denied*, 440 U.S. 913, 99 S.Ct. 1227, 59 L.Ed.2d 462 (1979) (finding no protected interest in water service where tenant had no

## B. Notice

■ Having concluded that James had a protectable property interest in receiving water service, we next consider whether due process required the City to notify James "of the threat of termination of [her] service." *Memphis Light,* 436 U.S. at 14, 98 S.Ct. at 1563.

In *Memphis Light,* the Court recognized that "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" is a fundamental requirement of due process. *Id.* at 13, 98 S.Ct. at 1562 (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)). The notice provided to the customer in *Memphis Light* consisted of a "final notice" contained in the utility's bills which "simply stated that payment was overdue and that service would be discontinued if payment was not made by a certain date." *Id.* The utility also circulated a flyer to certain customers advising them that they could bring their bill to a neighborhood counselor for assistance if they had difficulty making payment. However, neither the "final notice" nor the flyer informed the customers of the process for disputing a claim. Under these circumstances, the Court held that while the utility's notification procedure was "adequate to apprise the [plaintiffs] of the threat of termination of service, [it] was not 'reasonably calculated' to inform them of the availability of 'an opportunity to present their objections' to their bills." *Id.* at 14, 98 S.Ct. at 1563 (citation omitted). In so holding, the Court noted that "[l]ay consumers of electric service, the uninterrupted continuity of which is essential to health and safety, should be informed clearly of the availability of an opportunity to present their complaint. In essence, the recipients of a cutoff notice should be told where, during which hours of the day, and before whom disputed bills ap-

propriately may be considered." *Id.* at 15 n. 15, 98 S.Ct. at 1563 n. 15.

■ In *Memphis Light,* the framework of analysis for determining the specific dictates of due process was provided by the Supreme Court's decision in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). This framework considers three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335, 96 S.Ct. at 903. Applying these factors, the *Memphis Light* Court found as follows: First, "[t]he customer's interest is self-evident. Utility service is a necessity of modern life; indeed, the discontinuance of water or heating for even short periods of time may threaten health and safety." *Memphis Light,* 436 U.S. at 18, 98 S.Ct. at 1565. Second, "the risk of an erroneous deprivation ... is not insubstantial." *Id.* Finally, "[t]he utility's interests are not incompatible with affording the [required] notice and procedure." *Id.*

Applying the three *Mathews* factors to the present case, it is apparent that due process was not afforded to James. Like *Memphis Light,* "the cessation of essential services for any appreciable time works a uniquely final deprivation [to appellant]. Moreover, the probability of error in utility cutoff decisions is not so insubstantial as to warrant dispensing with all process prior to termination." *Id.* at 20, 98 S.Ct. at 1566 (citation omitted). Finally, the City's interest in receiving payment from the user or owner is satisfied. If notice is sent to the residence, either the actual user or the owner will be notified of the impending disconnection of service.[12] The administrative burden requiring some

---

contract with utility and could point to no Illinois law providing tenant "with a legitimate claim of entitlement to water service").

**12.** The former Fifth Circuit has held that an ordinance giving a three-day notice to the owner or tenant prior to termination of water services

was inadequate and violative of the Due Process Clause of the Fourteenth Amendment since it did not give pre-termination notice to the actual user and entitled the user to "federal judicial relief under the provisions of [42 U.S.C.] Section 1983." *Davis v. Weir,* 497 F.2d 139, 145 (5th Cir.1974).

notice to the residence is not as onerous as the deprivation of water to a household.

While the plaintiffs in *Memphis Light* had *some* notice of cancellation of their utility service, here, the City gave James, the actual user, no notice whatsoever before it first terminated her water service. As stipulated by the parties, the City ordinances relating to utilities do not provide for a pretermination notice prior to the discontinuance of residential water service. R–1–35–5. Thus, failing to provide any possible notice to actual water service users, the City's notification procedure is not "reasonably calculated" to inform them of the impending water service cutoff. *Memphis Light*, 436 U.S. at 15 n. 15, 98 S.Ct. at 1563 n. 15.

Furthermore, appellees' claim that James's October 18, 1990 agreement with the utility company provided her with the requisite notice is meritless. This is so because James was entitled to a thirty-day grace period under Fla.Stat. § 180.135(4). By terminating appellant's water service five (5) days after the service was re-started, instead of the mandatory thirty days, the City violated the requirement set forth in subsection four. Even though appellant agreed that her service would be canceled if she failed to pay the $212.50 within five days of commencement of water service at her residence, James did not waive her right to the thirty-day window under Fla.Stat. § 180.135(4).

In sum, the City failed to provide notice reasonably calculated to apprise appellant, an actual user, of the impending water service cutoff. Therefore, the City deprived James of a protected property interest without due process of law.

## V. CONCLUSION

For the reasons stated herein, the district court erred in granting the City's Motion for Summary Judgment and denying appellant's claim that she had a protected property interest in city water service. In order to fulfill the requirements of due process, the City is required to provide actual users with pretermination notice before utility service is discontinued.

Since appellant does have a constitutionally protected property interest, the district court erred in dismissing her claim under 42 U.S.C. § 1983. Consequently, we RE-VERSE the district court's decision granting summary judgment in favor of appellees and REVERSE the district court's denial of appellant's motion for partial summary judgment. Appellees' policy of disconnecting water service to a property without giving prior notice of termination to actual users constitutes a denial of due process and entitles appellant to at least nominal damages pursuant to 42 U.S.C. § 1983. The cause is hereby REMANDED to the district court with direction to apply the analysis stated herein and to conduct a trial on the issue of compensatory damages.

COX, Circuit Judge, dissenting:

The City of St. Petersburg ("the City") cut off water service to James's duplex on two occasions, and she contends that her rights under the Fourteenth Amendment were violated on each occasion. The circumstances surrounding each cutoff were different, and proper analysis requires that they be analyzed separately.

### The First Cutoff

I conclude that James had no constitutionally protected property interest in water service at the time of the first cutoff. This case, unlike any of the cases relied upon by the majority, involves water service to a duplex for which neither the owner, the tenant nor any user occupying the apartment had complied with the City's procedures for initiating water service. No one had paid the security deposit; no one had requested service and agreed to pay for that service. To possess a property interest in water service, "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The majority concludes that under Florida law, any actual user of water has a protected property interest in continued water service. I find no support for that conclusion in the Florida statutes cited.

Florida statutes seem to contemplate that someone—presumably either the owner or a

tenant—will contact the utility company, pay any required security deposit, and agree to pay for the service.[1] At the time of the first cutoff, neither the owner, Jordan, nor the tenant, James, had done that. The cutoff followed the former owner's request, over a month after his sale of the property, that the City terminate water service. There is no contention that Chen, the former owner, had any obligation to James, a tenant of the new owner. Chen's request that service be terminated was nothing more than a request that service no longer be provided for his account.

The majority opinion cites three Florida statutes to support the conclusion that James had a legitimate claim of entitlement to water service at the time of the first cutoff. I find nothing in these statutes to support the notion that a tenant has a "legitimate claim of entitlement" to water service notwithstanding the fact that neither owner nor tenant has arranged for the service.

The majority's reliance on our decision in *DiMassimo* is misplaced. *DiMassimo* involved a group of tenants whose landlord had their water service terminated in an attempt to constructively evict them. *DiMassimo v. City of Clearwater*, 805 F.2d 1536, 1537–38 (11th Cir.1986). The property interest entitling the plaintiffs to due process was not the expectation of continued water service as mere users, but the "right to prevent the landlord from obtaining a constructive eviction by disconnecting the city water services." *DiMassimo*, 805 F.2d at 1540.

Two other circuits have held that a mere user of water does not have a constitutionally protected property interest. The Fifth Circuit so held in *Coghlan v. Starkey*, 845 F.2d 566, 569–70 (5th Cir.1988), noting that the tenant had refused to apply for water service. The court said:

> This Court has ruled that there is no support "for the proposition that there is a constitutional right to receive [utilities] when the applicant refuses to comply with reasonable administrative procedures." *Burgess v. City of Houston*, 718 F.2d 151, 154 (5th Cir.1983).

The Seventh Circuit reached a similar conclusion in *Sterling v. Village of Maywood*, 579 F.2d 1350, 1353–54 (7th Cir.1978), *cert. denied*, 440 U.S. 913, 99 S.Ct. 1227, 59 L.Ed.2d 462 (1979).

James's failure to demonstrate that the City has deprived her of a constitutionally protected property interest makes it unnecessary to determine whether the City afforded her due process. *Marrero v. City of Hialeah*, 625 F.2d 499, 502, 519 (5th Cir. 1980).

### The Second Cutoff

The second cutoff was occasioned by James's failure to pay the security deposit required by the City as a condition precedent to providing water service. The majority concludes that the notice given James of this cutoff was inadequate because James "was entitled to a thirty-day grace period under Fla.Stat. Ch. 180.135(4)."

It is doubtful that James's contact and subsequent agreement with the City gave rise to a constitutionally protected property interest in continued water service. Nothing in the Florida statutes or our decision in *DiMassimo* would dictate such a conclusion. The fact that no one had paid the required security deposit would appear to preclude a finding that James had such an interest. *See Coghlan*, 845 F.2d at 569–70. However, assuming arguendo the existence of such a property interest, the question becomes what process is due. *Mackey v. Montrym*, 443 U.S. 1, 10, 99 S.Ct. 2612, 2617, 61 L.Ed.2d 321 (1979).

The question of what process is due is a question of federal constitutional law. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 1492, 84 L.Ed.2d 494 (1985). The majority's reliance on *DiMassimo* should have prompted a conclusion that James received constitutionally sufficient process. In *DiMassimo* our court affirmed the district court's determination that what the Due Process Clause required was notice, five days prior to termination of service, "in order to allow the tenant suffi-

---

1. Section 180.135(3) of the Florida Statutes specifically contemplates a security deposit. Fla. Stat. § 180.135(3) (West Supp.1993).

cient time to exercise his statutory right to seek an injunction in the state court against his landlord requiring the continuation of water service." *DiMassimo,* 805 F.2d at 1538. In this case, James received actual notice on October 18 that service would be terminated on October 22[2] without further notice if the security deposit were not paid. There is no contention that this did not afford her adequate time to sue her landlady in state court and obtain an injunction.[3]

Under the circumstances the four day notice would appear to be all the process that was due.

Despite the fact that federal law determines the adequacy of process, *Loudermill,* 470 U.S. at 541, 105 S.Ct. at 1492, the majority erroneously finds the answer to the question of what process was due in a Florida statute, Fla.Stat. § 180.135(4). The majority then misconstrues that statute and concludes that it affords a customer a thirty-day grace period for payment of a security deposit.

The statute provides, in pertinent part, "[n]othing in this section shall be construed *to prohibit* a municipality from discontinuing service to a tenant who is in arrears 30 days or more...." Fla.Stat. § 180.135(4) (West Supp.1993) (emphasis added). That entitlement is interpreted as a prohibition. The majority would have the statute read, "a municipality is prohibited from discontinuing service until a tenant is in arrears for 30 days or more." However the statute is read, though, it does not apply here. A security deposit is simply not the kind of arrearage the statute contemplates.

The court decides this case incorrectly. Unfortunately the economic burden this decision will impose upon utilities in Florida will not be insubstantial. I dissent.

### ON PETITION FOR REHEARING AND SUGGESTION FOR REHEARING EN BANC
#### Dec. 30, 1993.

Before TJOFLAT, Chief Judge, FAY, KRAVITCH, HATCHETT, ANDERSON, EDMONDSON, COX, BIRCH, DUBINA, BLACK and CARNES, Circuit Judges.

**2.** While James received one day less notice than the court required in *DiMassimo,* this distinction is not meaningful.

BY THE COURT:

A member of this court in active service having requested a poll on the suggestion for rehearing en banc and a majority of the judges in this court in active service having voted in favor of granting a rehearing en banc,

IT IS ORDERED that the above cause shall be reheard by this court en banc. The previous panel's opinion is hereby VACATED.

**3.** In fact, James received an injunction against her landlady on October 26, the same day she filed an action in state court.