Andrea JAMES, Individually and on behalf of her four dependent children, Plaintiff–Appellant,

v.

CITY OF ST. PETERSBURG, FLORIDA, Robert L. Ulrich, as Mayor of the city of St. Petersburg; Robert D. Obering, as City Manager; William Johnson, as Director of the Public Works Department for the City of St. Petersburg, Florida; Bobbie Joe Jordan, and Chun–Liang Chen, Defendants–Appellees.

No. 92–2291.

United States Court of Appeals, Eleventh Circuit.

Oct. 3, 1994.

---

John P. Cunningham, St. Petersburg, FL, for appellant.

Cathy L. Lucrezi, Tallahassee, FL, for amicus curiae the Housing Workgroup of Fla. Legal Services, Inc.

Michael S. Davis, Ruthann O'Brien O'Neill, Suzanne A. Ennis, Mark A. Winn, City Attorney's Office, St. Petersburg, FL, for appellees.

Before TJOFLAT, Chief Judge, KRAVITCH, HATCHETT, ANDERSON, EDMONDSON, COX, BIRCH, DUBINA, BLACK and CARNES, Circuit Judges.*

COX, Circuit Judge:

Andrea James filed this 42 U.S.C. § 1983 action against the City of St. Petersburg and various City officials, asserting that a tenant who is a user of water service has a property interest in continued water service protected by the Due Process Clause of the Fourteenth Amendment and that terminating such service without prior notice deprives the user of procedural due process. We hold that under applicable law, James did not have a property interest in continued water service protected by the Fourteenth Amendment.

## I. FACTS AND PROCEDURAL HISTORY

On October 2, 1990, James, along with her minor children, moved into a duplex in St. Petersburg, Florida. James had entered into an oral lease with her landlord, Bobbie Joe Jordan. Under the lease, James was to pay $350 a month rent for an apartment, to include water service.

Jordan had recently purchased the duplex from Chun–Liang Chen. On October 8, 1990, two months after the sale to Jordan, Chen telephoned the City Utility Accounts Division and asked that water service to the duplex be terminated. Neither Chen nor the City knew that James occupied the duplex at the time. The City terminated water service later that day.

James waited until October 18, 1990, to contact the City and report that she and her children were living in the duplex without water service. She met with City Utilities Accounts Manager David Nichols, who explained that James could establish an account in her own name but that a security deposit was required. James told Nichols that she did not have the money for a deposit. As an accommodation to James, Nichols agreed to

---

* Judge Barkett became a member of the court after February 18, 1994, when this case was argued and taken under submission. She has elected not to participate in this decision.

resume water service to the apartment until October 22, 1990, but stated that service would again be terminated without further notice if the deposit was not paid by 8:30 a.m. on October 22. James signed an agreement to this effect. The deposit was not paid, and on October 22, the City again terminated water service.[1]

Two days later James filed this § 1983 action against the City and various City officials.[2] James's complaint alleged that the Due Process Clause of the Fourteenth Amendment required that the City give her notice prior to the termination of water service. She sought declaratory and injunctive relief, damages, and attorney fees. She also sought a temporary restraining order requiring the City to reestablish water service to her apartment. The district court denied James's motion for a restraining order and later granted the City defendants summary judgment. A panel of this court reversed the district court's decision, holding that James had a property interest in continued water service, that James was entitled to due process in the form of pretermination notice, and that the City's failure to provide notice reasonably calculated to apprise James of the impending termination deprived her of due process. *James v. City of St. Petersburg,* 6 F.3d 1457 (11th Cir.1993). We vacated the panel opinion and granted rehearing en banc. *Id.* at 1465.

## II. STANDARD OF REVIEW

A grant of summary judgment is subject to de novo review on appeal. *Southpace Properties, Inc. v. Acquisition Group,* 5 F.3d 500, 504 (11th Cir.1993). Upon reviewing a grant of summary judgment, we examine the evidence and factual inferences in the light most favorable to the non-moving party to determine whether a genuine issue of material fact exists and whether the moving party is enti-

tled to judgment as a matter of law. *Key West Harbour Dev. Corp. v. Key West,* 987 F.2d 723, 726 (11th Cir.1993).

## III. DISCUSSION

■ The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of ... property, without due process of law." U.S. Const. amend. XIV, § 1. The Supreme Court has explained:

> Property interests ... are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

James argues that under Florida law she had a protected property interest in continued water service and that due process required that she receive notice prior to the termination of service. The City counters that James, as a mere user, had no such property interest.

■ In order for an individual to have a protected property interest, he or she "clearly must have more than an abstract need or desire for it. He [or she] must have more than a unilateral expectation of it. He [or she] must, instead, have a *legitimate claim of entitlement to it.*" *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709 (emphasis added).

James cites three Florida statutes as the source of her entitlement to continued water service: Fla.Stat. chs. 83.67(1), 180.135(1)(a), and 180.135(4) (1993). Section 83.67(1) prohibits a landlord from directly or indirectly causing the termination or interruption of a tenant's utility service. Section 180.135(1)(a)

---

**1.** Subsequently, James had service to the apartment reestablished. In a separate state court action James instituted against her landlord, Jordan, James was allowed to apply $212.50 of her November rent to the City's security deposit. In March 1991, James asked the City to terminate her water service as she was vacating the premises. On the termination date, James had an unpaid account balance of $155.23.

**2.** Claims against Jordan and Chen were also asserted, but James subsequently dismissed them. Although named in James's notice of appeal, her appeal presents no issue relative to their dismissal.

prevents a utility from disallowing service to an owner or a tenant based on nonpayment of service charges incurred by a former occupant of the rental unit. Finally, section 180.-135(4) allows a landlord to begin eviction proceedings against a tenant who fails to pay for utility services and further states that "[n]othing in this section shall ... prohibit a municipality from disconnecting service to a tenant who is in arrears 30 days or more." Fla.Stat. ch. 180.135(4) (1993).

■ All of these statutes assume a contractual relationship between either owner or tenant and the utility. The statutes contemplate that someone—either the owner or a tenant—will comply with the City's procedures for initiating water service by requesting the service, agreeing to pay for the service, and paying the required security deposit. Section 180.135(3) of the Florida Statutes assumes there will be a security deposit, allowing a utility to apply the security deposit to delinquent account balances of any occupant or tenant. Fla.Stat. ch. 180.135(3) (1993).

Because neither James nor her landlord complied with the City's requirements for initiating water service, which included the making of a security deposit, James had no legitimate claim of entitlement to water service under Florida law. James, therefore, had no protected property interest in water service under the Fourteenth Amendment. James's landlord had a duty to have water service provided, Fla.Stat. ch. 83.51(2)(a)5 (1993), but under the circumstances the City had no duty to provide it.[3]

James relies on this court's decision in *DiMassimo v. City of Clearwater*, 805 F.2d 1536 (11th Cir.1986), to support her argument that actual users of water service have a property interest in continued service. *DiMassimo* involved a group of tenants whose landlord ·caused their water service to be terminated in an effort to constructively evict them. The property interest said to have entitled the tenants to due process was not the expectation of continued water service as mere users, but the "right to prevent the

landlord from obtaining a constructive eviction by disconnecting the city water services." *Id.* at 1540.

In similar cases involving individuals without established accounts, two of our sister circuits have held that mere users of water do not have a constitutionally protected property interest in continued service. The Fifth Circuit so held in *Coghlan v. Starkey*, 845 F.2d 566 (5th Cir.1988). The court noted that the plaintiff had refused to apply for water service and further stated, "[t]his Court has ruled that there is no support 'for the proposition that there is a constitutional right to receive [utilities] when the applicant refuses to comply with reasonable administrative procedures.'" *Id.* at 569 (alterations in original) (quoting *Burgess v. City of Houston*, 718 F.2d 151, 154 (5th Cir.1983)). The Seventh Circuit reached a similar result in *Sterling v. Village of Maywood*, 579 F.2d 1350, 1353–54 (7th Cir.1978), *cert. denied*, 440 U.S. 913, 99 S.Ct. 1227, 59 L.Ed.2d 462 (1979).

James's failure to demonstrate that she had a constitutionally protected property interest in continued water service makes it unnecessary to determine whether the City afforded her procedural due process. *See Marrero v. City of Hialeah*, 625 F.2d 499, 519–520 (5th Cir.1980).

## IV. CONCLUSION

The district court properly granted the City and City officials summary judgment.

AFFIRMED.

---

**3.** In James's state court action, she obtained an injunction on October 26, 1990, requiring her landlord, Jordan, to provide her apartment with water service. Jordan did not comply with the injunction and James ultimately obtained a judgment against Jordan for $2237.50 in damages.