961 F.2d 1576
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Daniel C. CADLE, Plaintiff-Appellant,
v.
CITY OF NEWTON FALLS, OHIO, Defendant-Appellee.
 No. 91-3717.
 United States Court of Appeals, Sixth Circuit.
 May 1, 1992.
 
 Before KEITH and MILBURN, Circuit Judges, and ENSLEN, District Judge.
 PER CURIAM:
 
 
 1
 Plaintiff Daniel C. Cadle ("Cadle") appeals the district court's grant of summary judgment for the defendant, City of Newton Falls, Ohio ("City"). Cadle brought this action pursuant to 42 U.S.C. § 1983, alleging that the City violated his constitutional rights to procedural and substantive due process and his right to privacy under the fourth and fourteenth amendments. For the reasons stated below, we AFFIRM.
 
 I.
 
 2
 The district court opinion succinctly stated the facts of this case and are adopted as follows. Cadle receives water service from the City at his premises located at 4363 LaFrance Street, Newton Falls, Ohio. Before the house was sold to Cadle, the former owner of the premises had tapped into the city's water supply. By applying to tap into the municipal water supply, the property owner submits to all rules and regulations passed by the City relating to the furnishing and use of water service.
 
 
 3
 In April and June 1989, defendants investigated a hose attached to Cadle's spigot which they suspected was used to supply water to his neighbor. On July 26, 1989, the City's Water Distribution Foreman, R. Dale Fowler ("Fowler"), informed Cadle by letter that Fowler had observed a hose line connected to Cadle's backyard water spigot which, according to Fowler, was being used to furnish water to plaintiff's neighbor. The letter further stated that Cadle's conduct violated both a Newton Falls City Ordinance as well as Ohio Revised Code § 6109.13. ORC § 6109.13 provides:
 
 
 4
 No official, officer, or employee in charge of or being employed in the maintenance and operation of a public water system and no other person, firm, or corporation shall establish or permit to be established any connection whereby water from a private, auxiliary, or emergency water system may enter the public system, unless such private, auxiliary, or emergency water system, and the method of connection and use of such system, has been approved by the environmental protection agency.
 
 
 5
 According to ORC § 6109.14, upon learning of a possible contamination of a public water system, the state director of environmental protection "shall notify the municipal corporation, county, public institution, or person owning or operating such public water system of his (the director's) findings and of the time and place, when and where a hearing may be had."
 
 
 6
 According to the letter, Cadle's alleged conduct also violated provisions of the Ohio Administrative Code ("OAC") designed to guarantee the public water systems against "backflow" contaminants. One source of such contaminants is identified in the OAC as water from an "auxiliary water system" which causes a potentially contaminated source to "backflow" into the system. Unless a backflow prevention system has been installed and approved by the water supplier, "the supplier of water shall deny or discontinue, after reasonable notice to the occupant thereof, the water service to any premises...." OAC § 3745-95-08(A).
 
 The letter further stated:
 
 7
 If by 12:00 noon on September 11, 1989, the hose and/or pipe is not disconnected and removed, the water department will shut off the water service supplying 4363 LaFrance St., Newton Falls, Ohio.
 
 
 8
 Fowler concluded the letter by inviting Cadle to contact him by telephone in the event Cadle had questions related to the letter.
 
 
 9
 Cadle responded to Fowler's letter by sending a letter and memorandum dated September 8, 1989, to Mark Rohr ("Rohr"), the City Manager. In the letter and memorandum, Cadle did not deny the water-sharing allegations, but outlined his conduct from April 1989 with City officials and his request that the City test his water to see if it is in fact contaminated. It is undisputed that Cadle's request to test his water was not accepted. Near the end of his letter, Cadle stated: "If I am in violation of any rule or law, then I expect the City to make formal charges so that I can respond properly instead of cutting off my water."
 
 
 10
 Cadle's water service was not terminated in September 1989. Rather, the City prosecutor filed two successive misdemeanor actions against Cadle in September 1989 and April 1990, alleging violations of the Regulations of the City Water Department. The first misdemeanor complaint was voluntarily dismissed by the City in January 1990 because the pleading caption incorrectly stated that the lawsuit was being brought on behalf of the State of Ohio rather than the City of Newton Falls.
 
 
 11
 In March 1990, Rohr gave notice to Cadle by letter that unless he disconnected the garden hose that he was allegedly using to supply his neighbor with water, then the City would take legal action. The letter stated that:
 
 
 12
 [T]he EPA has been contacted regarding the situation that exists at your property. The EPA has suggested that we shut off all water service to you. The City of Newton Falls does not want to be so harsh as to eliminate your water service, but the City must see that their Rules and Regulations are followed.
 
 
 13
 The City filed a second misdemeanor complaint on April 19, 1990, alleging violations of the Regulations of the Newton Falls Water Department, adopted February 5, 1990, and effective March 5, 1990, which state in pertinent part as follows:
 
 SECTION 6: SERVICE LINE CONSTRUCTION
 
 14
 ... No approval will be given for lines that cross one lot or property line to serve another property. No taps will be made, nor will service lines be permitted under driveways. Unions or couplings will not be permitted under pavement or sidewalks. Lines must be blocked well at the main.
 
 
 15
 SECTION 7: SERVICE LINE SERVES A SINGLE PROPERTY
 
 
 16
 Each property must have its own service line. The service line must be connected to the city's water main line. The service line shall not cross one property to serve another property, by any means. Where more than one dwelling exists on a lot, a single service line must be used, but each branch service must be provided without an outside curb valve. A master curb valve must be provided for the master service line near the property.
 
 
 17
 The regulations contain the following provisions concerning notice of alleged violations and penalties for a violation of the regulations:
 
 
 18
 SECTION 1: Any person found to be in violation of any provision of these Rules and Regulations, shall be served by the city with written notice, stating the nature of the violation and providing a reasonable time limit for the satisfactory correction thereof. The offender shall, within the period of time stated in such notice, permanently cease all violations.
 
 
 19
 SECTION 2: Any person who shall continue any violation beyond the time limit on the written notice, shall be guilty of a minor misdemeanor, and on conviction thereof, shall be fined any amount not exceeding One Hundred Dollars ($100.00) for each violation. Each day in which the violation shall continue shall be deemed a separate offense.
 
 
 20
 The second misdemeanor action proceeded to trial on October 24, 1990, and was dismissed by the trial judge after he determined that Cadle, as defendant in that action, had not received notice of the City's intent to prosecute him for a violation of the above City Regulations.
 
 
 21
 On October 26, 1990, two of the defendants went upon Cadle's property without obtaining his consent and inspected Cadle's water spigot and the attached hose. The defendants also inspected the other end of the hose which attached to Cadle's neighbor's water spigot. By turning the faucets and water supply on and off, they determined that the neighbor was receiving water from Cadle through the hose.
 
 
 22
 On October 29, 1990, two of the defendants again entered Cadle's property without his consent and delivered a letter from Richard Clark, acting manager for the City, which stated that Cadle's water service was being terminated immediately in order to "protect the public health, safety, and welfare of the citizens of Newton Falls and the other water consumers of the water system...." The two defendants who delivered the letter terminated Cadle's water supply by closing the water shut-off valve, which is located away from the house and about fifteen feet from the street.
 
 
 23
 On November 1, 1990, Cadle filed his complaint and a motion for a temporary restraining order, which the district court denied. The court did, however, grant a motion for a preliminary injunction upon conditions agreed to by the parties, which included an agreement that the City restore Cadle's water service during the pendency of the case and that Cadle would remove any lines or hoses that supplied water to any of his neighbors.
 
 
 24
 The City then moved for summary judgment on Cadle's substantive claims. The district court granted summary judgment in favor of the City. This timely appeal followed.
 
 II.
 
 25
 Cadle's first claim is that he was deprived of his property, i.e., his water service, without procedural due process. He contends that the City failed to give adequate notice or an opportunity to respond prior to terminating his service. The City argues that Cadle is not entitled to procedural due process because he failed to satisfy his initial burden of pleading and proving the absence of adequate state remedies.
 
 
 26
 In Vicory v. Walton, 721 F.2d 1062 (6th Cir.1983), cert. denied, 469 U.S. 834 (1984), this Court held that in order to state a claim for relief in federal court under § 1983, a plaintiff must show that available state procedures were not adequate to redress the alleged wrong. The Court stated that "[s]ection 1983 was not meant to supply an exclusive federal remedy for every alleged wrong committed by state officials. Rather, the statute is a remedy for only those wrongs which offend the Constitution's prohibition against property deprivations without procedural due process.... In a procedural due process case under section 1983, the plaintiff must attack the state's corrective procedure as well as the substantive wrong." Id. at 1065-66. Because the plaintiff in Vicory failed to allege or show any deficiency in the state's remedies, the Court reversed the district court's judgment in favor of the plaintiff.
 
 
 27
 Likewise, Cadle simply failed to allege or show that there were inadequate state remedies available to redress his alleged harm. Therefore, we affirm the district court's judgment to dismiss Cadle's first claim.
 
 
 28
 Cadle raises two additional arguments on appeal. First, he claims that the City's termination of his water service violated his substantive due process rights. He also argues that defendants entered onto his property in violation of his fourth and fourteenth amendment rights.
 
 
 29
 We conclude that Cadle's substantive due process claim is without merit. As recognized by the district court, Cadle's claim is procedural, not substantive. In Charles v. Baesler, 910 F.2d 1349, 1353 (6th Cir.1990), this Court noted that:
 
 
 30
 Most, if not all state-created contract rights, while assuredly protected by procedural due process, are not protected by substantive due process. The substantive Due Process Clause is not concerned with the garden variety issues of common law contract.... State created rights such as [a] contractual right to promotion do not rise to the level of "fundamental" interests protected by substantive due process.
 
 
 31
 In this action, Cadle has failed to show that he had even a contractual right to or property interest in his water service.
 
 The Supreme Court has provided that:
 
 32
 Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law--rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.
 
 
 33
 Board of Regents v. Roth, 408 U.S. 564, 577 (1972). The City correctly interprets this statement to mean that a property interest is created and secured by existing rules, laws or "understandings." It insists that there are no rules or laws in Ohio creating a property interest in water services.
 
 
 34
 Cadle contends that he has a claim of entitlement to his water services which creates a property interest. Cadle cites Memphis Light, Gas & Water Division v. Craft, 436 U.S. 1 (1978), in support of his claim that public utility services are cognizable property interests. In that case, the Supreme Court held that plaintiffs had a cognizable property interest in their public water service. The Supreme Court, however, based its determination in Craft on Tennessee law, which prohibited the termination of such service "at will." The Court stated that "[t]he availability of [ ] local-law remedies is evidence of [Tennessee's] recognition of a protected interest." Id. at 11. See also Myers v. City of Alcoa, 752 F.2d 196 (6th Cir.), cert. denied, 474 U.S. 901 (1985) (noting that the property interest recognized in Craft was based, at least in part, on the obligation for providing utility services under Tennessee law). There appear to be no obligations or remedies for the receipt of water services in Ohio. Therefore, we conclude that Cadle has no interest in his water service which is protected by substantive due process.
 
 
 35
 As to Cadle's fourth amendment claim, the district court persuasively argued that Cadle's fourth amendment rights were not violated. Cadle claims that on several occasions the individual defendants went onto his property in search of alleged criminal activity. It is undisputed that defendants went onto Cadle's land and inspected a hose attached to his spigot and on one occasion investigated his neighbor's spigot to determine whether Cadle was supplying water to the neighbor. In addition, defendants went onto Cadle's land to deliver the October 1990 termination notice to him.
 
 
 36
 In ruling on Cadle's claim that he was subjected to unreasonable searches, the district court relied on Frates v. City of Great Falls, 568 F.Supp 1330 (D.Montana 1983). The district court stated that:
 
 
 37
 In [Frates ], plaintiff's water service was terminated after plaintiff allegedly failed to pay his entire water bill. Part of plaintiff's § 1983 claim included a claim that the city officials violated plaintiff's fourth amendment rights by entering his property to turn off his water. The Court in Frates concluded that the officials['] actions in turning off the landowner's water did not constitute a search within the meaning of the fourth amendment because the defendants had not filed criminal proceedings against the plaintiff landowner.
 
 
 38
 In this case, the individual defendants have denied that their visits to plaintiff's property were for the purpose of conducting an investigation to support criminal charges against the plaintiff. In light of the two misdemeanor actions filed against the plaintiff, the Court is not entirely persuaded by those denials. However, the Court still finds from the undisputed facts that there was no reasonable expectation of privacy in the spigot and city water shut-off valves given their open visibility and the known expectation on the part of subscribers to municipal services that their use of public utilities permits entrance of city officials onto their land for purposes related to their use.
 
 
 39
 The district court also relied on OAC § 3745-95-03(B), which provides for water suppliers to enter premises for the purposes of making surveys and investigations of water use practices within in the premises.
 
 
 40
 Moreover, the individual defendants are entitled to qualified immunity from Cadle's fourth amendment claims. Government officials are shielded by such immunity for performing discretionary functions "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987). It is not necessary to show that their action has been held unlawful, but it must be shown that "in the light of pre-existing law the unlawfulness [of their action] [was] apparent." Id. at 640 (emphasis added). Under the circumstances of this case, defendants reasonably believed that they could lawfully enter upon Cadle's property. Therefore, they are entitled to qualified immunity.
 
 III.
 
 41
 For the above reasons, we AFFIRM the judgment of the Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, to dismiss this action.
 
 
 42
 ---------------
 
 
 
 * The Honorable Richard A. Enslen, United States District Judge for the Western District of Michigan, sitting by designation.