RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 05a0226p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

BRIAN MIDKIFF; MONICA MIDKIFF,
> *Plaintiffs-Appellants,*

*v.*

No. 04-3508

ADAMS COUNTY REGIONAL WATER DISTRICT, et al.,
> *Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 02-00901—Susan J. Dlott, District Judge.

Argued: April 19, 2005

Decided and Filed: May 24, 2005

Before: SUHRHEINRICH and GILMAN, Circuit Judges; ACKERMAN, District Judge.[*]

---

## COUNSEL

**ARGUED:** Kimberly M. Skaggs, EQUAL JUSTICE FOUNDATION, Columbus, Ohio, for Appellants. John W. Hust, SCHROEDER, MAUNDRELL, BARBIERE & POWERS, Cincinnati, Ohio, for Appellees. **ON BRIEF:** Kimberly M. Skaggs, EQUAL JUSTICE FOUNDATION, Columbus, Ohio, Edward A. Icove, SMITH & CONDENI, Cleveland, Ohio, for Appellants. John W. Hust, SCHROEDER, MAUNDRELL, BARBIERE & POWERS, Cincinnati, Ohio, for Appellees.

---

## OPINION

---

HAROLD A. ACKERMAN, District Judge. Plaintiffs Brian and Monica Midkiff ("Midkiffs") appeal from the District Court order that granted the motions to dismiss of Defendants Adams County Regional Water District ("Water District") and the Water District's manager, Brian Ast. The District Court also denied the Midkiffs' motion for leave to file a Second Amended Complaint. Following a dispute between the Midkiffs and their landlords, the Water District terminated water service to the Midkiffs' property pursuant to the request of the Midkiffs' landlords. The landlords were the customers of the Water District and held the account for water service to the property. Plaintiffs filed a purported class action under 42 U.S.C. § 1983, attacking the Water

---

[*] The Honorable Harold A. Ackerman, United States District Judge for the District of New Jersey, sitting by designation.

District's policy that tenants and other non-property owners cannot establish water service accounts in their own names because they are not property owners. The Midkiffs claimed that the Defendants' policy violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment. We hold that the Plaintiffs have not established a due process or equal protection violation because they have not shown a legitimate claim of entitlement to water service and because Defendants' conduct does not shock the conscience. This Court also concludes that the Magistrate Judge in this case did not err in denying the Midkiffs' motion for leave to file a Second Amended Complaint. We **AFFIRM** the judgments below in their entirety.

## I. Background

Because this matter is before the Court on an appeal from a grant of a motion to dismiss, the following facts are derived from the Midkiffs' First Amended Complaint and construed in the light most favorable to the Midkiffs.

The Midkiffs leased a home at 2197 Bailey Road in Peebles (Adams County), Ohio from their landlords, Defendants William and Phyllis Albrecht ("Albrechts"). The Midkiffs have four young children, and at the time of the events that gave rise to this suit, Monica Midkiff was pregnant and experiencing complications due to diabetes. The Water District is the exclusive supplier of water services to residents of Adams County, and provided water service to the Midkiffs' home through an account maintained by the Albrechts, the owners of the property. The Water District billed the Albrechts each month, and under the terms of the Midkiffs' lease, the Albrechts presented the water bill to the Midkiffs each month for payment. Following a dispute between the Midkiffs and the Albrechts over the repair of a hot water heater, the Midkiffs allegedly failed to make a timely rent payment in November 2002. Instead of initiating collection or eviction proceedings, the Midkiffs allege that on November 26, 2002, the Albrechts requested that the Water District terminate water services to the leased premises and close the account held by the Albrechts for that address. The Water District immediately obliged, and terminated water services to the Midkiffs' home without giving any notice to the Midkiffs.

On November 26 and again on November 27, 2002, the Midkiffs contacted the Water District and requested that they be allowed to establish an account in their own names and have water service resumed. Representatives of the Water District informed the Midkiffs on both occasions that they could open their own account only if they "produced a deed" to the premises or other proof of ownership. First Am. Compl. ¶ 14. The representatives stated that Water District policy dictated that only property owners, not lessees or tenants, could establish an account. On November 27, the office manager of the Water District contacted the Midkiffs' counsel and left a message stating that she could do nothing about the Midkiffs' situation because she was "following company rules." First Am. Compl. ¶ 15.

The Water District allegedly restored service to the premises on December 2, 2002. However, William Albrecht then allegedly trespassed onto the premises without the Midkiffs' knowledge or consent and shut off the water supply. The Midkiffs allegedly lacked water service until December 17, 2002, when they vacated the premises.

The Midkiffs filed this purported class action suit against the Water District and its manager Ast on November 29, 2002, just three days after the initial service termination. The purported class consists of all tenant/lessee consumers who cannot establish water service accounts in their own name because such consumers are not owners of the property for which water service is sought. The Midkiffs brought claims under 42 U.S.C. § 1983 for violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment, and sought declaratory and injunctive relief against the Water District and Ast, as well as compensatory and punitive damages. The Midkiffs

later amended their complaint to add a claim against the Albrechts under the Ohio Landlord-Tenant Act ("LTA"), Ohio Rev. Code Ann. §§ 5321.01-5321.19.

All Defendants filed motions to dismiss the complaint in January 2003. In conjunction with their opposition, the Midkiffs moved for leave to file a Second Amended Complaint to add a claim under the federal Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691a-1691f , and to add an allegation that the Water District acted as the agent of the Albrechts under the LTA. Without objection, the District Court on February 12, 2003, stayed class certification proceedings pending resolution of the motions to dismiss.

On September 2, 2003, Magistrate Judge Timothy S. Hogan rendered a Report and Recommendation ("R&R") proposing that Defendants' motions to dismiss be granted. With regard to the due process claim, Magistrate Judge Hogan concluded that the Midkiffs had no property right to continued water service and therefore no procedural due process violation existed. He also found that the Water District did not violate substantive due process because the service termination did not shock the conscience. The R&R rejected the equal protection claim because, under rational basis scrutiny, the Water District's policy was rationally related to legitimate government interests. Because no constitutional violation existed, the R&R suggested that Ast be granted qualified immunity and dismissed. The Magistrate Judge denied the Midkiffs' motion to amend their complaint, holding that such amendment would be futile because they could not state valid ECOA claims and because, due to the recommended dismissal of all the federal claims, the agency allegations could be better presented in a state-court complaint. Finally, the Magistrate Judge suggested that the District Court decline to exercise jurisdiction over the Midkiffs' pendant state landlord-tenant claim because no viable federal cause of action remained in the case.

The District Court adopted the Magistrate Judge's R&R without elaboration and dismissed the complaint against all Defendants on March 25, 2004. The Midkiffs timely appealed. The District Court had subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343(a)(4), and 2201, and had supplemental subject matter jurisdiction over Plaintiffs' pendant state-law claims pursuant to 28 U.S.C. § 1367. We have jurisdiction over the present appeal pursuant to 28 U.S.C. § 1291.

## II. Analysis

### A.    Due Process Claims

This court reviews *de novo* a district court's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *Fidel v. Farley*, 392 F.3d 220, 226 (6th Cir. 2004). Dismissal of a claim is improper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The court must accept the facts set forth in the complaint as true and construe the complaint in the light most favorable to the plaintiff. *Eubanks v. CBSK Fin. Group, Inc.*, 385 F.3d 894, 897 (6th Cir. 2004).

#### 1.      *Procedural Due Process*

The Midkiffs claim that the Water District's termination of water service constituted deprivation of property without due process in violation of the Due Process Clause of the Fourteenth Amendment. "This Court has analyzed section 1983 actions based on deprivations of due process as falling into two categories: violations of procedural due process and violations of substantive due process." *Mansfield Apartment Owners Ass'n v. City of Mansfield*, 988 F.2d 1469, 1473-74 (6th Cir. 1993). For a procedural due process claim, a plaintiff must establish a constitutionally protected

liberty or property interest and show that such an interest was deprived without appropriate process. *Board of Regents v. Roth*, 408 U.S. 564, 569-70 (1972); *LRL Props. v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1108 (6th Cir. 1995). This Court applies a two-part analysis to procedural due process claims. "First, the court must determine whether the interest at stake is a protected liberty or property right under the Fourteenth Amendment. Only after identifying such a right do we continue to consider whether the deprivation of that interest contravened notions of due process." *Thomas v. Cohen*, 304 F.3d 563, 576 (6th Cir. 2002).

To establish a protected property interest in a government service, a plaintiff must show a "legitimate claim of entitlement" to that service; an "abstract need or desire" or a "unilateral expectation" is insufficient. *Roth*, 408 U.S. at 577. As the Supreme Court stated in *Roth*, a legitimate claim of entitlement must stem from some independent source of law:

> Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Id.*

The Midkiffs argue that they have a constitutionally protected property interest in continued water service that was abridged by the Water District without adequate process because they received no notice before termination and were denied in their personal efforts to restore service. Where a valid independent source of law establishing a property right may be found, the Supreme Court and the Sixth Circuit have indeed held that the Due Process Clause applies to termination of utility services. *See, e.g.*, *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 11 (1978) (holding that Due Process Clause applied to termination of utility services because Tennessee law prohibited public utility from terminating utility service at will); *Mansfield*, 988 F.2d at 1474 (declaring that expectation of utility services by landlords rises to level of "legitimate claim of entitlement" in case involving city-provided water services governed extensively by city ordinances and regulations); *cf. Palmer v. Columbia Gas of Ohio, Inc.*, 479 F.2d 153, 165 (6th Cir. 1973) (finding that Due Process Clause applied to termination of gas service because gas companies in Ohio are subject to comprehensive system of state regulatory authority).

However, a panel of this Court recently declined to find a property interest in continued water service and rejected several of the arguments advanced by the Midkiffs. In *Golden v. City of Columbus*, 404 F.3d 950, 2005 WL 873321 (6th Cir. Apr. 18, 2005), the plaintiff was a tenant and was therefore precluded from being a water service customer. The plaintiff in *Golden*, as the Midkiffs do here, relied on *Craft* and *Mansfield* in attempting to establish a protected property interest in continued water service. This Court in *Golden* distinguished *Craft* because *Craft* is "plainly limited to utility customers." *Id.* at *4. In addition, *Craft* expressly relied on Tennessee law that prohibited a public utility from terminating utility service at will and provided specific remedies for unlawful termination. *Craft*, 436 U.S. at 11. As this Court noted in *Golden*, *Roth* requires that "the decision is completely determined by state law," and therefore *Craft* is limited to Tennessee law. *Golden*, 2005 WL 873321, at *4. The panel in *Golden* also rejected reliance on *Mansfield* because plaintiffs in *Mansfield* were "property owners who had accounts with the City of Mansfield's utility department." *Id.* at *5. Therefore, this Court's reliance on *Craft* in its *Mansfield* decision was proper because both cases involved established utility customers, whereas in *Golden* the plaintiff had no contractual or customer relationship with the City of Columbus's Department of Public Utilities. *Id.* Furthermore, plaintiffs in *Mansfield* were landlords, and thus their legitimate claim of entitlement to water service under the City of Mansfield's municipal law

has no bearing on the legitimacy of a non-property owners' entitlement to water services under different relevant law here. The Midkiffs, as tenants and not property owners, were not customers of the Water District and therefore *Craft* and *Mansfield* fail to support their claim.

*Craft* and *Mansfield* also provide no help for the Midkiffs because of the particular status of the Water District under Ohio law. The utility providers in *Craft* and *Mansfield* were public utilities. Under Ohio state law, particularly Chapter 6119 of the Ohio Revised Code, regional water districts such as the Adams County Regional Water District here are not public utilities, but are instead independent political subdivisions exempt from Ohio Public Utility Commission regulations and with independent authority to adopt their own rules and practices.[1] No provision in Chapter 6119 requires a water district to provide service to any particular individual or group. Thus, whereas in cases such as *Craft* and *Mansfield*, independent sources of law expressly provided support for finding a property right in continued water service, here no such explicit support exists.

Faced with this obstacle, the Midkiffs essentially infer an entitlement from several asserted independent sources of law, including the LTA, the Water District's own rules and regulations, and Ohio contract law regarding third-party beneficiaries. The Magistrate Judge correctly rejected each of these bases in his R&R, and the District Court properly adopted the Magistrate Judge's R&R.

The Midkiffs first argue that two provisions of the LTA provide a basis for finding a property right in continued water service. Ohio Rev. Code Ann. § 5321.04(A)(6) requires landlords to "supply running water" and "reasonable amounts of hot water" to tenants, "except where the building that includes the dwelling unit is not required by law to be equipped for that purpose." Ohio Rev. Code Ann. § 5321.15(A) provides that a landlord shall not "initiate any act, including termination of utilities or services, . . . for the purpose of recovering possession of residential premises, other than as provided in Chapters 1923., 5303., and 5321. of the Revised Code." This provision bars landlords from engaging in self-help actions and requires them to seek redress through formal eviction proceedings. Based on these two sections of the LTA, the Midkiffs argue that Ohio law provides a basis for finding a property right to continued water service.

While these provisions could provide the Midkiffs with an action against their landlords, the Albrechts, they simply cannot be inflated to provide a right to continued water service. In *Golden*, this Court noted that "other circuits have held certain provisions common to landlord-tenant statutes to be sufficient" to establish a legitimate claim of entitlement to water service. *Golden*, 2005 WL 873321, at *5. The *Golden* panel expressed no opinion on this issue because plaintiff in *Golden* did not rely on any provisions of landlord-tenant law. *Id.* at *6. We must address this issue, and we conclude that the cases from our sister circuits fail to assist the Midkiffs here in transforming their rights under the LTA into a constitutional claim against the Water District.

As this Court noted in *Golden*, the Eleventh Circuit has held that Florida's Landlord and Tenant Act provided a protectable interest in continued water service to tenants because Florida landlord-tenant law "would not sanction the withdrawal of water services from . . . tenants by their landlords because such action would constitute the failure to provide necessary facilities for sustaining life or the constructive eviction of tenants contrary to statutory directives for such action."

---

[1] Chapter 6119 governs regional water districts and grants them unbridled discretion to set their own policies and procedures. Regional and county water districts may adopt their own rules and regulations, levy and collect taxes and special assessments, and set their own rates and terms of service. Ohio Rev. Code Ann. § 6119.06. Furthermore, a regional water district's charges and terms may not be reviewed by any agency of the state or another political subdivision such as Ohio's Public Utility Commission. Ohio Rev. Code Ann. § 6119.09; *see also* Ohio Rev. Code Ann. § 6119.08(A) & (C) (authorizing board of trustees of regional water district to prescribe the manner of use and distribution of water services).

*DiMassimo v. City of Clearwater*, 805 F.2d 1536, 1539-40 (11th Cir. 1986); *cf. James v. City of St. Petersburg*, 33 F.3d 1304, 1306-07 (11th Cir. 1994) (*en banc*) (citing Florida landlord-tenant and utility service law as possible bases for property interest, but holding that because neither landlord or tenant complied with City's requirements for initiating water service, plaintiff-tenant had no legitimate claim of entitlement to water service under Florida law).  The Ninth Circuit relied on *DiMassimo* to find a protected interest under Oregon law in tenants' right to seek injunctive relief prior to the termination of water service.  *Turpen v. City of Corvallis*, 26 F.3d 978, 979 (9th Cir. 1994).

We decline to apply these cases from other circuits to the instant matter.  *DiMassimo* concerned Florida law and *Turpen* considered Oregon law, whereas here we must look solely to Ohio law to find a property interest.[2]  Notably, the Ninth Circuit in *Turpen* expressly declined to find a property right in continued water service, as the Midkiffs claim here, but rather held that notice to tenants of water service termination was required so that the tenant may preserve her property interest in bringing a claim for injunctive relief against her landlord.  *Turpen*, 26 F.3d at 978-79.  Furthermore, both *DiMassimo* and *Turpen* involved suits against municipal utilities, whereas here the Water District enjoys protected status under Ohio law as an independent political subdivision.  Because *DiMassimo* and *Turpen* applied inapplicable law under different factual circumstances than the instant case, these cases and the theories they espouse fail to assist the Midkiffs in establishing a protected property interest right in continued water service.

The Midkiffs also cite *Thomas* as support for using landlord-tenant law as a basis for finding tenants' property rights.  *Thomas* involved forcible eviction by police officers in Tennessee without any hearing, judicial approval, or notice to the tenants.  *Thomas*, 304 F.3d at 576-77.  Forcible eviction at the hands of the state, implicating a basic possessory interest in property against the backdrop of a statutory scheme for judicially-approved eviction by government authorities, simply cannot be compared to termination of water services by an independent political subdivision with no obligation to provide water service to any individual.  Furthermore, the LTA requires landlords to make water service available but does *not* require landlords to pay for such service.  *Jenkins v. Roger C. Perry & Co.*, 83 Ohio App. 3d 234, 236-37, 614 N.E.2d 850, 852 (1992) ("The question of who pays for water used at a leasehold premise is a matter of contract between the landlord and the tenant.").

Therefore, no legitimate entitlement to water service from the Water District may be inferred from the LTA.  Holding otherwise, as the Water District points out, would transform each of the many landlord obligations detailed in the LTA into constitutionally protected property rights enforceable against any involved state-related actor.  The LTA cannot be construed to have so broad a scope.  As this Court stated in *Golden*, which involved termination of water services due to the delinquency in payment of a prior tenant, "a landlord's failure to uphold his end of the bargain, even coupled with his failure to comply with a city's code provision regarding the payment of water bills, does not constitute a violation of the Due Process Clause by the city."  *Golden*, 2005 WL 873321,

---

[2]In any event, Ohio's LTA appears to be less expansive than the Florida and Oregon landlord-tenant laws at issue in *DiMassimo* and *Turpen*.  For example, Florida law, as discussed in *DiMassimo*, allows for a broad right of a tenant to enforce her rights under Florida's Landlord and Tenant Act in a civil action, including a suit to enjoin a landlord from accomplishing a constructive eviction.  Fla. Stat. Ann. § 83.54; *DiMassimo*, 805 F.2d at 1539-40.  Oregon law, which was applied in *Turpen*, also provides for injunctive relief for violations of the landlord's statutory duties.  Or. Rev. Stat. § 90.360(2).  Ohio's LTA, on the other hand, provides a *limited* right to a tenant to bring an action against her landlord where the landlord fails to fulfill certain obligations under the LTA.  Ohio Rev. Code Ann. § 5321.07(B)(2).  The LTA also allows a tenant to bring a civil action for *damages* for violation of the LTA's prohibitions against self-help eviction measures.  Ohio Rev. Code Ann. § 5321.15(C).  This provision, however, does not expressly provide for broad injunctive relief prior to such eviction measures.  Therefore, Florida and Oregon law appear more expansive than Ohio law, and *DiMassimo* and *Turpen* fail to support the Midkiffs' claim here.

at *5. Similarly here, the Albrecht's apparent violation of the LTA cannot be transformed into a violation of the Due Process Clause by the Water District. Especially in the context of the Water District, which has the statutory, unreviewable authorization to set its own rules and policies, the Midkiffs' argument under the LTA lacks merit.

The Midkiffs also sought leave to file a Second Amended Complaint ("Proposed Complaint") to add an agency theory. Under this theory, the Midkiffs posit that because the LTA defines "landlord" to include an "agent," Ohio Rev. Code Ann. § 5321.01(B), and because the Water District complied with the Albrechts' request to terminate service, the Water District acted as the Albrechts' agent under the LTA. Thus, the Midkiffs allege in their Proposed Complaint that the Water District, as an agent of the Albrechts, violated the LTA, and that this agency relationship further supports the notion that tenants such as the Midkiffs have a legitimate claim of entitlement to continued water service from their landlord and the Water District.

The Magistrate Judge denied the Midkiffs' motion for leave to amend with respect to the agency allegation because no federal claim survived Defendants' motion to dismiss and the agency theory could be presented in a complaint in Ohio state court. Such a ruling presupposes that the Midkiffs sought to add an agency theory solely to create liability on the part of the Water District under the LTA. Indeed, the agency allegation appears in the Proposed Complaint in the Midkiffs' allegations for individual relief against all Defendants under the LTA, rather than in their due process allegations. Proposed Compl. ¶ 54. However, on appeal the Midkiffs also argue that the agency allegation bolsters their theory that the LTA provides a basis for finding a protected property interest under the Due Process Clause. Under a liberal interpretation of the Proposed Complaint, we will consider application of the proposed agency allegation to the Midkiffs' due process claims.

We find that amendment of the complaint to add an agency theory with regard to the due process claims would have been futile. Federal Rule of Civil Procedure 15(e) allows a party to amend its pleading after its initial amendment only by leave of the court, and "leave shall be freely given when justice so requires." A motion for leave to amend may be denied for futility "if the court concludes that the pleading as amended could not withstand a motion to dismiss." *Martin v. Associated Truck Lines, Inc.*, 801 F.2d 246, 249 (6th Cir. 1986). The Midkiffs' argument expands agency theory nearly to the breaking point by equating the contractual relationship between the Water District and the customer/property owner with an agency relationship. Ohio law defines an agency relationship as a "consensual fiduciary relationship between two persons where the agent has the power to bind the principal by his actions, and the principal has the right to control the actions of the agent." *Funk v. Hancock*, 26 Ohio App. 3d 107, 110, 498 N.E.2d 490, 493-94 (1985). While agency is a question of fact, none of these required elements were even alleged in the Proposed Complaint. Rather, the Midkiffs seek to add a mere conclusory allegation of agency that provides no additional support for their argument under the LTA. This is clearly insufficient as a matter of law.

The Midkiffs next point to the Rules and Regulations of the Water District ("Water District Rules"), adopted pursuant to the authority granted to the Water District under Ohio Rev. Code Ann. § 6119.06(N). Under the heading "Service Application," the Water District Rules provide that "any owner of a single family dwelling, auto court, duplex, or multiple dwelling building, a person holding property having reasonable accessibility to the source of, and who is in need of having water supplied to this property, may be a customer of the District." Joint Appendix ("J.A.") at 201 (Water District Rule II.A). The Midkiffs argue that "a person holding property" should be read to include tenants under the common usage of "holding property." However, the very language of the Rule makes clear that the "person holding property" phrase does not constitute a separate category from "any owner." Rather, the "person holding property" language simply forms one of several prerequisites to qualify as a customer of the Water District. A customer of the Water District thus

must be: (1) "any *owner* of a single family dwelling, auto court, duplex, or multiple dwelling building"; (2) "a person *holding property* having reasonable accessibility to the source of" water; *and* (3) "in need of having water supplied to" her property. *Id.* (emphasis added). The Midkiffs simply misread the language of this Rule.

Furthermore, the Water District highlights other provisions of the Water District Rules that specifically refer to "owners," such as the Rule that explicitly requires customers to provide written proof of their legal title of ownership to the property in question. J.A. at 201 (Water District Rule II.B); *see also* J.A. at 209 (Water District Rule IX) (rules regarding change of occupancy and the requirements for "[n]ew owners"); J.A. at 211 (Water District Rule XI) (rules regarding suspension of service and referring to "property owner"). The Midkiffs argue that these Rules, when read in conjunction with Rule II.A, are ambiguous and contradictory. However, the Water District Rules clearly and unambiguously contemplate that only property owners, and not tenants or lessees, shall be customers of the Water District. As tenants and not property owners, the Midkiffs have no legitimate claim of entitlement to service from the Water District under the Water District Rules.

The Midkiffs finally cite Water District Rule IX.A, which requires that "[n]ot less than one week's notice must be given personally to the District to discontinue service or to change occupancy." J.A. at 209 (Water District Rule IX.A). Based on this Rule, the Midkiffs argue that the Water District was required to provide notice before terminating the Midkiffs' service. We fail to see how a rule requiring that *customers* give one week's notice to the Water District for their own service termination could be interpreted to provide that the Water District itself must give anyone – customer or non-customer – similar one-week notice. As suggested in the R&R and adopted by the District Court, the Water District Rules provide no support for the Midkiffs' theory.

The Midkiffs also argue that they are third-party beneficiaries to the contract between the Albrechts and the Water District and may enforce the rights of that contract, and therefore Ohio contract law provides an independent basis for their legitimate entitlement to water service. The Ohio Supreme Court has adopted the teachings of Restatement (Second) of Contracts § 302 (1981) regarding third-party beneficiaries. *Hill v. Sonitrol of Southwestern Ohio, Inc.*, 36 Ohio St. 36, 40, 521 N.E.2d 780, 784-85 (1988). The *Hill* court held, quoting the Restatement, that "'[p]erformance of a contract will often benefit a third person. But unless the third person is an intended beneficiary as here defined, no duty to him is created.'" *Id.*, 521 N.E.2d at 784 (quoting Restatement (Second) of Contracts § 302 cmt. e). To be an intended beneficiary, as opposed to an incidental beneficiary, either the performance of the promise must "satisfy an obligation of the promisee to pay money to the beneficiary" or the circumstances must "indicate that the promisee intends to give the beneficiary the benefit of the promised performance." *Id.* (quoting Restatement (Second) of Contracts § 302).

The Magistrate Judge found that the Midkiffs were merely incidental beneficiaries and they did not establish a property right to water service based on contract law. The Midkiffs contend that they were intended third-party beneficiaries because the Water District knew both that the Midkiffs occupied the premises owned by the Albrechts and that the Midkiffs paid for the services indirectly. They also again rely on their faulty reading of the Water District Rules to argue that those Rules recognize a tenant's interest in water service and therefore somehow create a third-party beneficiary relationship between the Water District and any end-consumer.

As the Magistrate Judge correctly found, the Midkiffs' allegations are insufficient to establish them as third-party beneficiaries. The Water District Rules themselves make clear that only the property owner may contract with the Water District, and those Rules fail to recognize any right of non-owners to seek service or to enforce the property owner's rights under the Water District-property owner contract. Further, the Midkiffs do not allege that the performance of the Water District satisfies some obligation of the Albrechts to the Midkiffs. "'If the promisee has no

intent to benefit a third party, then any third-party beneficiary to the contract is merely an 'incidental beneficiary,' who has no enforceable rights under the contract.'" *Id.*, 521 N.E.2d at 784-85 (quoting *Norfolk & W. Co. v. United States*, 641 F.2d 1201, 1208 (6th Cir. 1980)). The Midkiffs are clearly incidental beneficiaries at most, and have failed to provide any support for a property interest in Ohio contract law.

After a thorough review of the proffered bases for deriving a property interest in continued water service, we conclude that the Midkiffs have not established such an interest. This Court in *Golden* noted that "[w]hile there may be relevant 'rules or understandings' under Ohio law, Golden does not point us to any." *Golden*, 2005 WL 873321, at *7. Here, the Midkiffs pointed us to several proposed rules or understandings under Ohio law, but none prove remotely sufficient. In an unpublished opinion, this Court previously expressly refused to find a legitimate claim of entitlement to water service under Ohio law and rejected reliance on *Craft* in the context of water service in Ohio. *Cadle v. City of Newton Falls*, 961 F.2d 1576 (table), 1992 WL 88904, at *4 (6th Cir. May 1, 1992). This Court in *Cadle* found, in the context of discussing the plaintiff's substantive due process claim, that "[t]here appear to be no obligations or remedies for the receipt of water services in Ohio," and therefore the plaintiff had no property interest in water service. *Cadle*, 1992 WL 88904, at *4. The Midkiffs have advanced several novel theories, but we agree with the conclusion that this Court reached in *Cadle*.

Because the Midkiffs have not established a legitimate claim of entitlement to continued water service, we need not consider whether they have satisfactorily alleged the inadequacy of available state remedies under the doctrine first established by the Supreme Court in *Parratt v. Taylor*, 531 U.S. 527 (1981). We also need not determine what process might have been due under the Fourteenth Amendment because no property interest has been established. *See, e.g.*, *Golden*, 2005 WL 873321, at *7 n.6. We therefore affirm the dismissal of the Midkiffs' procedural due process claim.

### 2.     *Substantive Due Process*

Substantive due process claims involve allegations of "(1) deprivations of a particular constitutional right and (2) actions that 'shock the conscience.'" *Mansfield*, 988 F.2d at 1474 (quoting *Braley v. City of Pontiac*, 906 F.2d 220, 224-25 (6th Cir. 1990)). The Midkiffs assert arguments under both prongs of substantive due process. They first attempt to bootstrap their defective procedural due process arguments into a substantive due process claim by contending that continued utility service amounts to a protected property right, and hence deprivation of that interest equates to violation of a constitutional right. As discussed above, this argument fails. Second, they argue that the Water District's conduct in terminating water service without notice to the Midkiffs "shocks the conscience." Yet as the Magistrate Judge commented, terminating water service at the request of a customer (the Albrechts) "is not remotely shocking." J.A. at 153. While the Albrechts' conduct here might have been unpleasant, or even perhaps unlawful under the LTA, their behavior – shocking or not – may not be imputed to the Water District based on the Midkiffs' allegations.

Furthermore, even if the Water District's conduct as alleged in the complaint somehow could be viewed as shocking the conscience, substantive due process requires only that the Water District show that its policy of allowing only property owners to be customers is rationally related to a legitimate government interest. *Mansfield*, 988 F.2d at 1477. As analyzed below with regard to the equal protection claim, the Water District's policy possesses such a rational basis. We therefore conclude that the District Court did not err in adopting the Magistrate Judge's recommendation that the Midkiffs' procedural and substantive due process claims be dismissed.

### B.   Equal Protection Claim

The Midkiffs also allege that the Water District's policy violates the Equal Protection Clause of the Fourteenth Amendment because the policy discriminates between property owners and non-property owners, and that no rational basis supports such a classification. "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class" or burdened a fundamental right. *Purisch v. Tenn. Tech. Univ.*, 76 F.3d 1414, 1424 (6th Cir. 1996) (citations omitted). If a protected class or fundamental right is involved, this Court must apply strict scrutiny, but where no suspect class or fundamental right is implicated, this Court must apply rational basis review. *Hadix v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000). Under rational basis review, the governmental policy at issue "will be afforded a strong presumption of validity and must be upheld as long as 'there is a rational relationship between the disparity of treatment and some legitimate government purpose.'" *Id.* (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)). Under rational basis review, a plaintiff faces a severe burden and must "negate all possible rational justifications for the distinction." *Gean v. Hattaway*, 330 F.3d 758, 771 (6th Cir. 2003); *see also Heller*, 509 U.S. at 320-21.

The Midkiffs do not allege that strict scrutiny applies here. Rather, they allege that the Water District's policy, which discriminates between landlords and tenants, has no rational basis. The Water District, however, asserts that its policy serves the governmental interest in protection of the Water District's financial stability because its policy "avoids problems with collections associated with tenants whose connection with the property is more transitory than that of the owner." Water District Br. at 27. The Water District also argues that its policy serves the interest in water conservation. As the Magistrate Judge noted, the policy challenged here encourages landlords to rent to financially responsible tenants or to collect sufficient security in advance, and it also gives property owners an incentive to not waste water and to maintain their plumbing systems because they bear the responsibility for large water bills. J.A. at 154. These governmental interests are rationally related to the disparate treatment of landlords and tenants under the Water District rules and policies. The Midkiffs argue that the Water District presented no evidence to support the notion that the Water District policy is rationally related to conservation of water, but under rational basis review, a purported rational basis may be based on "rational speculation unsupported by evidence or empirical data" and need not have a foundation in the record. *Heller*, 509 U.S. at 320-21.

This Court recently held in *Golden* that the plaintiff sufficiently stated a claim under the Equal Protection Clause regarding a city policy that discriminated between different classes of tenants. *Golden*, 2005 WL 873321, at *7-*10. The *Golden* court stated:

> We read the complaint as alleging that the City treated two classes of tenants dissimilarly and two classes of residents, tenants and landlords, dissimilarly. We hold that, *as to the former theory*, Golden states a claim upon which relief can be granted under our case law.

*Id.* at *8 (emphasis added). The *Golden* court proceeded to analyze the equal protection claim solely with regard to the city policy's irrationally differential treatment of tenants whose landlords owed the city for water service and other tenants whose landlords did not have such debt. This Court in *Golden* expressed no opinion regarding the policy's differential treatment of landlords and tenants. In the instant case, the Water District's policy makes no distinction between different classes of tenants. Rather, it only distinguishes between landlords and tenants, or property owners and non-property owners. While the different classes of tenants in *Golden* were similarly situated, landlords and tenants are not so similarly situated. This Court's equal protection holding in *Golden* is therefore distinguishable in this case.

The Midkiffs' attempts to rebut the presumption of constitutionality of the Water District's policy fall short. The Water District's policy, rationally distinguishing between landlords and tenants, withstands equal protection scrutiny. Therefore, the District Court did not err in dismissing the Midkiffs' equal protection claim against the Water District.

## C.    Qualified Immunity

Under well-established qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The plaintiff bears the burden of establishing that the defendant is not entitled to qualified immunity. *Barrett v. Steubenville City Schs.*, 388 F.3d 967, 970 (6th Cir. 2004).

The Magistrate Judge recommended that defendant Brian Ast, manager of the Water District, enjoys qualified immunity here because the Midkiffs have not sufficiently alleged a violation of a clearly established statutory or constitutional right. The above analysis demonstrates that no constitutional or statutory violation occurred, let alone one that was clearly established or one of which a reasonable person should have known. The District Court did not err in dismissing Ast on the basis of qualified immunity.

## D.    Amendment of Complaint to Add ECOA Claim

As previously discussed, the District Court did not err in denying the Midkiffs' motion for leave to amend their complaint to add an agency allegation. In their Proposed Complaint, the Midkiffs also sought to add a claim against the Water District under the Equal Credit Opportunity Act ("ECOA"). The ECOA bars discrimination by creditors against any credit applicant "with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex or marital status." 15 U.S.C. § 1691(a)(1); *see also Mays v. Buckeye Rural Elec. Coop., Inc.*, 277 F.3d 873, 876 (6th Cir. 2002). The ECOA's purpose is to "'eradicate credit discrimination waged against women, especially married women whom creditors traditionally refused to consider for individual credit.'" *Mays*, 277 F.3d at 876 (quoting *Anderson v. United Fin. Co.*, 666 F.2d 1274, 1277 (9th Cir. 1982)). We have applied the *Burdine/McDonnell Douglas* burden-shifting framework used in Title VII cases to ECOA claims. *Id.* at 876-77. Under the ECOA, a creditor is one who grants a right "to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefor." 15 U.S.C. § 1691a(d).

The Magistrate Judge denied the motion for leave to amend with regard to the ECOA claim because addition of the ECOA claim would be an act of futility. Although this Court normally reviews denial of a motion for leave to amend a pleading for abuse of discretion, denial on the basis of futility is reviewed *de novo*. *Dubuc v. Green Oak Twp.*, 312 F.3d 736, 743 (6th Cir. 2002). Plaintiff in *Golden* also presented a claim under the ECOA. This Court in *Golden* assumed that the plaintiff was an applicant, that the city was a creditor, and that a transaction for water service is a credit transaction under the ECOA. *Golden*, 2005 WL 873321, at *11. Furthermore, this Court assumed that disparate impact claims are permissible under the ECOA. *Id.* at *11 & n.11. We make the same assumptions and need not resolve the complex statutory questions that these issues present because the Midkiffs' proposed ECOA claim contains a fundamental flaw that renders an amendment to add this claim futile.

The Proposed Complaint alleges that Mrs. Midkiff, as a married woman, is a member of a protected class under the ECOA, and that *both* Mr. and Mrs. Midkiff applied for credit from the Water District and both were denied because "she/he" did not own the property for which service

was requested.  Proposed Compl. ¶ 44.  The Midkiffs claim that the Water District policy discriminates against women and minorities because such protected groups form a disparately high portion of those non-property owners rejected as customers by the Water District, and that no formal notice of adverse action on a credit application was provided as required under 12 C.F.R. § 202.09, part of the Federal Reserve Board's Regulation B that implements the ECOA.  Proposed Compl. ¶ 45.

As noted, the Proposed Complaint states that Mr. *and* Mrs. Midkiff applied for credit. Therefore, as the Magistrate Judge held, Mrs. Midkiff cannot allege that she and her husband were denied credit because of her marital status or gender and thus cannot make out a prima facie case. *See Mays*, 277 F.3d at 877 (holding that the first element of a prima facie case of credit discrimination is "Plaintiff was a member of a protected class").  Indeed, the Proposed Complaint does not allege discrimination against Mr. or Mrs. Midkiff on the basis of any protected class of which either of them might be a member.  Rather, the Proposed Complaint asserts that the policy has a disparate impact on women and minorities generally, but states that Mr. and Mrs. Midkiff themselves were denied credit because "she/he did not own property where she requested continued water service."  Proposed Compl. ¶ 44.  The Magistrate Judge correctly concluded, as alleged in the Proposed Complaint, that the Water District denied credit to the Midkiffs not because of any discrimination on the basis of marital status or gender, but because of the Midkiffs' status as non-property owners.  Therefore, the Midkiffs cannot establish a prima facie case under the ECOA, and amendment of their complaint to add an ECOA claim would have been futile.

The Midkiffs, in asserting potential claims of women and minorities against the Water District policy barring non-property owners as customers, claim in passing to be asserting a form of third-party standing to bring a disparate impact ECOA claim.  As support for this theory however, the Midkiffs cite only a Supreme Court case addressing the limited scope of third-party standing for *constitutional* claims.  Midkiffs' Br. at 25 n.52 (citing *Barrows v. Jackson*, 346 U.S. 249 (1953)). The Midkiffs offer no other support for their conclusory assertion in a footnote to their brief that they have third-party standing to challenge the Water District policy's alleged discriminatory impact against minorities.  They provide no argument for the notion that third-party standing, usually found in certain First Amendment cases, may be valid for ECOA claims.

Finally, the Midkiffs argue that the Magistrate Judge ignored the fact that this case is a putative class action and that instead of denying leave to amend, he should have allowed amendment by intervention of a named plaintiff with proper standing to assert an ECOA claim.  However, the Midkiffs cite only to a Fourth Circuit case and a treatise discussing this case for this proposition. Midkiffs' Br. at 29 (citing *Simmons v. Brown*, 611 F.2d 65 (4th Cir. 1979), and Newberg and Conte on Class Actions § 1609 (3d ed. 1992)).  In *Simmons*, the Fourth Circuit concluded that the named plaintiffs failed to show that they belonged to any potential class and affirmed the District Court's denial of class certification.  The Fourth Circuit nonetheless instructed the District Court to retain the case on the docket for a "reasonable time" to allow a proper plaintiff to come forward and prosecute the class action.  *Simmons*, 611 F.2d at 67.  Here, the District Court stayed the Midkiffs' motion for class certification pending resolution of Defendants' motion to dismiss, the Midkiffs did not oppose this stay of class certification, and the Magistrate Judge and the District Court correctly held that the Midkiffs could not state a claim upon which relief could be granted.  *Simmons* is inapplicable here.

Because any ECOA claims by Mr. or Mrs. Midkiff could not withstand a motion to dismiss, the Magistrate Judge did not err in denying the Midkiffs' motion to amend their complaint to add

ECOA claims.  Furthermore, because no federal claims remained, the District Court correctly declined to exercise supplemental jurisdiction over the Midkiffs' pendant state law claims.[3]

### III.  Conclusion

For the foregoing reasons, this Court **AFFIRMS** the District Court's dismissal of the Midkiffs' complaint pursuant to Rule 12(b)(6) and **AFFIRMS** the Magistrate Judge's denial of the Midkiffs' motion for leave to file a Second Amended Complaint.

---

[3]The status of the Albrechts in this appeal is unclear.  The Albrechts filed a motion to dismiss below.  The Magistrate Judge recommended that the District Court should deny jurisdiction over the pendant state LTA claims against the Albrechts because no viable federal claims remained in the case, and that the District Court should therefore deny the Albrecht's motion to dismiss as moot.  The District Court adopted this recommendation.  We find that the District Court did not err in effectively dismissing all claims against the Albrechts.